BLUESTONE ENERGY DESIGN,
INC., Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.

Nos. 91–1288, 93–1829.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 1, 1995.

Decided Jan. 30, 1996.

Carolyn Elefant argued the cause and filed the briefs, Washington, DC, for petitioner. Paul V. Nolan entered an appearance.

Katherine Waldbauer, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent, with whom Jerome M.

Feit, Solicitor, Washington, DC, was on the brief.

Before: GINSBURG, ROGERS, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

The Federal Energy Regulatory Commission cited Bluestone Energy Design, Inc. for failing to comply with safety regulations governing small hydroelectric power plants and assessed a penalty of $206,100. We affirm the Commission's findings that Bluestone violated the relevant safety regulations. We find, however, that in determining the amount of the fine, the Commission exceeded its authority by considering the time and resources that its staff devoted to Bluestone. We therefore set aside the penalty and remand to the Commission for reconsideration of the fine.

## I.

The Federal Power Act, 16 U.S.C. §§ 791a–828c (1994), authorizes the Commission to issue regulations governing hydroelectric power projects, including rules "for the protection of life, health, and property." § 803(c). The Commission's safety regulations for hydroelectric projects are published at 18 C.F.R. part 12. At issue in this case are three sets of regulations, subparts C and D of part 12 and paragraph 12.4(b)(2)(iv). Subpart C directs hydroelectric project operators to file with the Commission an "emergency action plan" ("EAP") detailing steps to warn nearby inhabitants and property owners in the event of a "project emergency" such as a dam breach. 18 C.F.R. § 12.20(a), (b)(2) (1995). Project operators must update their EAPs at least once a year. § 12.24(a), (d). Subpart D requires project operators to file a report by an independent consultant ("IC") identifying any potential deficiencies in the power project or its operation that might endanger the public. § 12.32, .37. Paragraph 12.4(b)(2)(iv) subjects hydroelectric projects to the supervision of Commission regional engineers, who may require operators to take steps deemed "necessary or desirable."

Commission regulations permit operators of small hydroelectric projects to apply for exemptions from certain requirements of the Federal Power Act. § 4.101–.108. If an exempted project has a dam that exceeds a height of thirty-three feet, however, it must, even with an exemption, continue to file EAPs (subpart C) and IC reports (subpart D). § 4.106(h). It also remains subject to Commission supervision under paragraph 12.4(b)(2)(iv). *Id.* Under certain circumstances, the Commission may grant exemptions from the EAP and IC report requirements, but not from Commission supervision under paragraph 12.4(b)(2)(iv). Subpart C provides that the Commission "may exempt" a project operator from the EAP requirement if the operator "satisfactorily demonstrates that no reasonably foreseeable project emergency would endanger life, health, or property." § 12.21(a). According to subpart D, the Commission "may grant an exemption" from the IC report requirement "in extraordinary circumstances that clearly establish good cause for exemption." § 12.33(a). Subpart D explains that "[g]ood cause for exemption may include the finding that ... [the project's dams] meet the criteria for low hazard potential" set out at 33 C.F.R. part 222. § 12.33(b).

In the Electric Consumers Protection Act of 1986, Congress amended the Federal Power Act to authorize the Commission to assess penalties against any operator failing to comply with Commission regulations or compliance orders. *See* Pub.L. No. 99–495, § 12(c)–(d), 100 Stat. 1243, 1255–57 (1986) (codified at 16 U.S.C. § 823b(c)–(d) (1994)). The Commission may assess fines up to $10,000 per day per violation. 16 U.S.C. § 823b(c).

Petitioner Bluestone Energy Design, Inc. operates a small hydroelectric dam, the Clifton No. 3 project, on the Pacolet River in Spartanburg, South Carolina. Because the dam generates only 1.1 megawatts of power, the Commission considers it a small hydroelectric project and has granted it an exemption from certain requirements of the Federal Power Act. Bluestone's exemption,

however, contains a "Special Article," Article 6, which provides that if Bluestone's dam exceeds a height of thirty-three feet above streambed, the project is subject to subparts C and D and to paragraph 12.4(b)(2)(iv). The requirements of Article 6 are equivalent to those of 18 C.F.R. § 4.106(h), which the Commission had not yet adopted at the time it issued Bluestone's exemption. Because a 12.5–foot section of Bluestone's 280–foot dam is approximately thirty-five feet high, the dam is subject to subparts C and D and to paragraph 12.4(b)(2)(iv). Four homes approximately one mile downstream from the dam are located in the flood plain. Until destroyed by fire in September 1990, a trailer home was also situated in the flood plain.

On July 3, 1986, the Commission's Atlanta Regional Office notified Bluestone by letter that, because the presence of downstream dwellings rendered the project a "high hazard" dam, Commission regulations required Bluestone to file an EAP and an IC report. The letter advised Bluestone that it could seek an exemption from these requirements by showing through a dam breach analysis that the dam would not endanger nearby dwellings in the event of a breach. This letter began a lengthy exchange of correspondence between Bluestone and Commission officials. Because of the importance of this exchange to the issues before us, we summarize below its key events.

Receiving no response to its July 3, 1986 letter, the Atlanta Regional Office twice notified Bluestone in early 1987 that its EAP was overdue. Rather than filing an EAP, Bluestone submitted a dam breach study purportedly demonstrating that the dam was "low hazard." In late March, the Atlanta Regional Office reminded Bluestone, again by letter, of Bluestone's continuing obligation to submit an EAP and an IC report. Bluestone responded with an interim EAP in May 1987, but not with an IC report.

During the following year, Commission officials notified Bluestone at least three times that it was in violation of subpart D's IC report requirement and at least once that it was in violation of subpart C's requirement of an updated EAP. Although Bluestone filed an updated EAP in June 1988, from then until October 1992 it failed to submit an IC report or updated EAPs as they came due. Instead, Bluestone requested numerous extensions of time and filed approximately ten more dam breach studies in an effort to gain exemptions from subparts C and D. Commission officials repeatedly informed Bluestone that it was in violation of subparts C and D and that the data it was submitting did not demonstrate that the dam was low hazard.

On June 12, 1990, Commission staff issued a compliance order finding Bluestone in violation of subparts C and D. The Commission denied Bluestone's requests for rehearing and reconsideration, respectively, in April and June 1991. *See Bluestone Energy Design, Inc.,* 51 F.E.R.C. ¶ 62,239 (1990) (compliance order), *reh'g denied,* 55 F.E.R.C. ¶ 61,093, *recons. denied,* 55 F.E.R.C. ¶ 61,434 (1991).

In the meantime, following an inspection of the dam in September 1989, the Atlanta Regional Office directed Bluestone to install two warning signs and to repair leaks in the dam's spillway. Inspecting the dam again in June 1990, the Regional Office discovered that the leaks were not repaired and that the warning signs that Bluestone had installed were inadequate. The next month, the Regional Office sent Bluestone a letter requiring the submission of a plan for installing adequate warning signs, repairing leakage, and removing vegetation near the dam. Hearing nothing, the Commission notified Bluestone that it was in violation of its license and of 18 C.F.R. § 12.4 for failing to file a compliance plan. Two months later, in October 1990, the Commission issued an order to that effect. *Bluestone Energy Design, Inc.,* 53 F.E.R.C. ¶ 62,074 (1990) (compliance order). Reserving the right to impose penalties for violations that had already occurred, the order instructed Bluestone to file a compliance plan within thirty days. Bluestone filed a plan on December 3, 1990.

In September 1991, the Commission issued a notice of proposed penalty suggesting the following fines: for failure to file an IC report, $100 per day beginning November 1, 1988, the deadline set in a June 1988 letter to Bluestone; for failure to file an updated

EAP, $50 per day from August 31, 1989; and for failure to file on time a plan for installing warning signs, removing vegetation, and repairing leaks, $50 per day from August 10, 1990 until December 3, 1990, when Bluestone submitted such a plan. *Bluestone Energy Design, Inc.*, 56 F.E.R.C. ¶ 61,426, at 62,525 (1991) (notice of proposed penalty). Stating that the penalties totalled $141,050 as of August 1, 1991, the notice warned that fines would continue to increase until Bluestone filed an IC report and an updated EAP. *Id.* at 62,521.

In August, September, and October 1992, Bluestone submitted additional dam breach analyses. Based on these new data and because the trailer home in the downstream flood plain had burned in September 1990, the Commission in October 1992 reclassified Bluestone's dam as low hazard as long as the trailer was not rebuilt or replaced.

The Commission nevertheless pursued the earlier penalties. Accepting the amounts the Commission had suggested, an administrative law judge imposed a penalty of $206,100. *Bluestone Energy Design, Inc.*, 62 F.E.R.C. ¶ 63,025, at 65,120 (1993) (initial decision). The daily penalties for failing to file an updated EAP and an IC report ran until October 8, 1992, the day on which Bluestone submitted the final data that the Commission used to determine that the dam was a low hazard project. *Id.* at 65,119–20. The Commission affirmed this assessment and denied rehearing. *Bluestone Energy Design, Inc.*, 64 F.E.R.C. ¶ 61,003 (order affirming initial decision), *reh'g denied,* 65 F.E.R.C. ¶ 61,042 (1993). Bluestone seeks review of both the Commission's final compliance order and its final order assessing the penalty.

## II.

■ We consider first Bluestone's challenge to the Commission's findings that it violated subparts C and D by failing to file an updated EAP and an IC report. We accept the Commission's findings of fact if they are supported by substantial evidence. 16 U.S.C. § 825*l*(b). We afford substantial deference to the Commission's interpretations of its own regulations, deferring to the agency unless its interpretation " 'is plainly

erroneous or inconsistent with the regulation.' " *Thomas Jefferson Univ. v. Shalala,* —— U.S. ——, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994) (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)); *S.G. Loewendick & Sons, Inc. v. Reich,* 70 F.3d 1291, 1294 (D.C.Cir.1995).

■ Bluestone contends that the Commission's findings were not supported by substantial evidence. According to Bluestone, data that it submitted to the Commission early on indicated that its dam was low hazard, thus qualifying it for an exemption from the requirements of subparts C and D. Bluestone also argues that, because the Commission itself eventually recognized that the dam was low hazard, the Commission should not have assessed a penalty for noncompliance with subparts C and D after the date on which the trailer burned in September 1990.

The Commission responds that Bluestone's entire argument attacking the sufficiency of the evidence on which the Commission relied is largely beside the point. In the Commission's view, Bluestone has fundamentally misunderstood the agency's regulations and the nature of Bluestone's violations. The Commission explains that, although subparts C and D *allow* for exemptions from the EAP and IC report requirements, the granting of such exemptions is within the discretion of the Commission. According to the Commission, a dam is excused from the requirements of subparts C and D not because it is low hazard, but because the Commission has granted an exemption. The Commission points out that Bluestone's penalty is not based on the dam's actual hazards, but rather on Bluestone's refusal to file the updated EAPs and the IC report. In the Commission's view, the failure to file these reports creates its own safety hazard because without the reports, the Commission cannot know whether a dam breach would endanger downstream dwellings.

We find the Commission's interpretations of subparts C and D reasonable and consistent with the regulatory language. As the Commission reads these provisions, they are designed not just to prevent known hazards,

but to avoid uncertainty as to whether a hydroelectric power project is safe. As the Commission has explained, "[a] dam whose safety has not been verified is a potentially dangerous dam, and the Commission regards the existence of such a potential danger as a matter of the utmost concern and seriousness." *Flambeau Paper Corp.*, 53 F.E.R.C. ¶ 61,063, at 61,203 (1990). Because the Commission's enforcement of safety requirements for hydroelectric projects depends upon submission of data by operators, the Commission's interpretations of subparts C and D are reasonable. Bluestone's argument that it was exempt from the EAP and IC report requirements because it was low hazard is inconsistent with the Commission's interpretation of subparts C and D. These subparts provide that the Commission *may* grant exemptions under certain circumstances, not that such exemptions *must* be granted or that noncompliance will be excused.

Because Bluestone's violations consisted of its continuing failure to file an updated EAP and an IC report during the period in which it was not exempt from the requirements of subparts C and D, we uphold the Commission's determination that Bluestone's violations continued until October 8, 1992, the day on which Bluestone finally submitted data from which the Commission concluded that the dam was a low hazard project. That the trailer had burned two years earlier is irrelevant because Bluestone was obligated to file updated EAPs and an IC report until it actually obtained an exemption. Because Bluestone did not file the required documents, the Commission was fully authorized to fine Bluestone through October 8, 1992 even though the trailer had burned two years earlier.

■ Bluestone also challenges the Commission's citation for failure to install warning signs, remove vegetation, and repair leakage as Commission officials instructed under paragraph 12.4(b)(2)(iv). Bluestone charges that the Commission's letter of August 17, 1990 advising Bluestone of these violations did not provide adequate notice, as required by 16 U.S.C. § 823b(a). In support of this argument, Bluestone contends that, although the letter stated that Bluestone was in violation of "Article 4" of its "license," Bluestone had no license, but rather an exemption that did not contain an "Article 4." Bluestone claims that the letter was inadequate for another reason—the letter cited subsection 12.4(b) without indicating which portions of subsection 12.4(b) Bluestone had violated.

■ Bluestone's challenge to the adequacy of notice ignores the reference in the August 17, 1990 letter to an earlier letter dated July 11, 1990, in which the Atlanta Regional Office clearly directed Bluestone to install warning signs, remove vegetation, and repair leaks. In view of this earlier letter, we have no doubt that the August letter, even with its defects, gave Bluestone adequate notice. In the end, however, we need not decide this issue, for Bluestone has not preserved it for our review. Under the Federal Power Act's general provision for judicial review, we may not consider an objection that a party failed to raise in a petition for rehearing before the Commission "unless there is reasonable ground for failure so to do." 16 U.S.C. § 825*l*(b). Bluestone contends that it is not seeking judicial review under this general provision, but under the more specific provision for judicial review of Commission orders assessing penalties, 16 U.S.C. § 823b(d)(2)(B). As Bluestone correctly notes, this latter provision does not require a party challenging a penalty to seek rehearing; a party against whom the Commission assesses a penalty may appeal directly to an appropriate court within sixty days. Bluestone's argument, however, fails to take account of Bluestone's own failure to seek rehearing of the Commission's order of October 25, 1990, which found Bluestone in violation of Commission regulations for failing to file the requested compliance plan regarding warning signs, vegetation, and leaks. That order specifically stated that Bluestone had thirty days to appeal to the Commission. *See Bluestone,* 53 F.E.R.C. ¶ 62,074, at 63,-101. Because Bluestone never filed a petition for rehearing of the October 1990 order, the Commission was justified in treating the finding of a violation as a settled matter when issuing its later order assessing a penalty. We decline to read the penalty review

provision of 16 U.S.C. § 823b(d)(2)(B) to permit a party to attack collaterally Commission findings made in a previous order that the party did not challenge in a petition for rehearing in the first instance.

## III.

 We turn, finally, to Bluestone's challenges to the size of the penalty. We review the Commission's penalty assessment pursuant to 16 U.S.C. § 823b(d)(2)(B), which subjects our review to the standards set forth in the Administrative Procedure Act. We thus may set aside factual findings only if they are unsupported by substantial evidence on the record as a whole, 5 U.S.C. § 706(2)(E) (1994); we may set aside the Commission's legal conclusions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 706(2)(A). In keeping with our limited review of agency penalty assessments, we will not overturn the Commission's choice of a sanction unless the sanction is either " 'unwarranted in law or . . . without justification in fact.' " *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973) (ellipsis in original) (quoting *American Power & Light Co. v. SEC*, 329 U.S. 90, 112–13, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946)); *NL Indus., Inc. v. Department of Transp.*, 901 F.2d 141, 144 (D.C.Cir.1990). Applying these standards, we find merit in only one of Bluestone's arguments: in assessing the penalty, the Commission exceeded its authority by considering the time and resources that agency staff devoted to Bluestone's case.

 Because the Commission's power to assess penalties comes from Congress, the Commission can consider only those factors that Congress has specified. *Cf. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983) (noting that "[n]ormally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider"). Congress has instructed the Commission to consider three factors in determining the size of a proposed penalty: the nature of the violation; its seriousness; and "the ef-

forts of the licensee to remedy the violation . . . in a timely manner." 16 U.S.C. § 823b(c). The Commission's regulations set forth eleven factors bearing upon these three statutory considerations, including the operator's knowledge of the violation; the operator's efforts to comply and history of previous violations; and the damage, injury, or danger caused by the violation. *See* 18 C.F.R. § 385.1505(b) (1995). The Commission's list ends with a catch-all: "[w]hether there are any other pertinent considerations." § 385.1505(b)(11).

The ALJ considered staff time and resources as one such "other pertinent consideration," noting that Commission resources are limited and that the Commission depends upon prompt cooperation by operators for effective enforcement. *Bluestone*, 62 F.E.R.C. ¶ 63,025, at 65,117 (internal quotation marks omitted). In its order upholding the penalty, the Commission agreed that the ALJ's reliance on staff time and resources was justified by the Commission's need for cooperation from dam operators. Noting that "the diversion of staff resources . . . was merely one of many matters that the judge collectively considered in reaching his decision," the Commission concluded that "[i]t was not unreasonable" for the ALJ to consider staff time and resources. *Bluestone*, 64 F.E.R.C. ¶ 61,003, at 61,022–23.

In reviewing the Commission's interpretation of the Federal Power Act as permitting the Commission to consider staff time and resources in setting penalties, we follow the principles set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). We first consider whether the language of the Federal Power Act offers clear instruction regarding the propriety of considering staff time and resources in setting penalties. *See id.* at 842–43, 104 S.Ct. at 2781–82. In our view it does not. Use of staff time and resources is not listed as one of the three factors that Congress has authorized the Commission to consider. Furthermore, as to whether the use of staff time and resources is either relevant or irrelevant to the statutory factors, the Act is silent. In other statutes, Congress has

authorized agencies to set *fees* so as to recover the agencies' full costs, including costs of staff time and resources. *See, e.g.,* 21 U.S.C. § 886a(3) (1994) ("Fees charged by the Drug Enforcement Administration under its diversion control program shall be set at a level that ensures the recovery of the full costs of operating the various aspects of that program."). The Federal Power Act nowhere authorizes the Commission to recover expenses on behalf of the United States through penalties; rather, the Act specifically states that expenses for employing attorneys to enforce the Act "shall be paid out of the appropriation for the Commission." 16 U.S.C. § 825m(c).

Because the Federal Power Act does not directly address the propriety of considering staff time and resources, we turn to the second step of *Chevron,* testing for reasonableness the Commission's view that use of staff time and resources is relevant to the statutory factors. *Chevron,* 467 U.S. at 844–45, 104 S.Ct. at 2782–83. Neither the ALJ's initial decision imposing the penalty nor the Commission's order affirming that decision explains the link between staff time and resources and any of the three statutory factors, and we do not find persuasive the ALJ's explanation that the Commission's dependence on cooperation from dam operators renders the use of staff time and resources a legitimate consideration. Because the Commission has broad discretion to apportion its enforcement resources as it wishes, there is no guarantee that the amount of staff time and resources devoted to a case will correspond to the nature or seriousness of a violation or to the violator's efforts to comply. Where the Commission investigates what turns out to be a relatively unserious violation, any attempt by the agency to compensate for the apparently disproportionate "diversion of staff resources" would essentially increase the size of a penalty on account of the violation's lack of seriousness, contrary to Congress's instructions. For a violation that actually turns out to be serious, our ruling will not hamper the Commission's ability to consider the seriousness of the offense, for three of the eleven factors set forth in the Commission's regulations already address the seriousness of a violation. *See* 18 C.F.R.

§ 385.1505(b)(4), (6)–(7). Indeed, counsel for the Commission told us at oral argument that this is the first case in which the Commission has considered staff time and resources in setting a penalty. We find the Commission's consideration of this factor impermissible under the Federal Power Act.

■ Bluestone's remaining arguments regarding the size of the penalty are unpersuasive. Claiming that the penalty exceeds its gross annual revenues for each of 1990 and 1991, Bluestone argues that the Commission ignored evidence of its ability to pay. Although the Federal Power Act does not instruct the Commission to consider ability to pay, we need not decide here whether the agency may nonetheless consider this factor. Because Bluestone failed to present a satisfactory picture of its financial status, it was not an abuse of discretion for the Commission to decline to consider Bluestone's ability to pay. The ALJ explained that Bluestone failed to submit adequate financial data even though the judge recessed the hearing twice to give Bluestone time to submit financial information. *Bluestone,* 62 F.E.R.C. ¶ 63,-025, at 65,118. Bluestone also declined to provide complete answers to twenty-two out of twenty-four interrogatories regarding its financial status. *Id.* Bluestone's own accountant discredited the financial statement that Bluestone filed, describing it as "a departure from generally accepted accounting principles" and noting the omission of "substantially all of the information ordinarily included in financial statements." *Id.* (emphasis and internal quotation marks omitted).

■ Equally unpersuasive is Bluestone's argument that there is no nexus between the size of its penalty and the nature or seriousness of its offense. Stressing that the dam's height barely triggered the requirements of subparts C and D, Bluestone contends that its small dam never posed a serious threat to life or property. Like Bluestone's challenge to the Commission's findings of violations, however, this argument ignores the basis for the fine: failure to file documents that the Commission needed to ensure the safety of those living near the dam. Furthermore, in view of the Commission's power to assess

penalties of up to $10,000 per day per violation, the fines, considered on a per diem basis—$200 at their highest—do not strike us as excessive under the circumstances. The amount of the final penalty—over $200,000—was the direct result of Bluestone's continued noncompliance, including 1,437 days in noncompliance with subpart D and 1,133 days in noncompliance with subpart C. When the Commission issued its notice of proposed penalty, the fine was $141,500. The penalty grew by over $60,000 because Bluestone remained in noncompliance with subparts C and D for thirteen more months. We disagree with Bluestone that the size of the penalty is contrary to law, let alone that it "shocks the conscience." Brief for Bluestone at 5.

## IV.

We affirm the Commission's order finding Bluestone in violation of subparts C and D and of paragraph 12.4(b)(2)(iv). Having concluded that the Commission lacks authority to consider agency staff time and resources in assessing a penalty, we may either affirm, modify, or set aside the penalty ourselves or remand the proceeding to the Commission. 16 U.S.C. § 823b(d)(2)(B). Charging that the Commission's hearings on penalties "are a sham," Bluestone urges us not to remand. Brief for Bluestone at 45. Unconvinced by Bluestone's bare accusations and lacking any indication in the record of the amount of the penalty attributable to staff resources, we prefer to remand to the Commission to modify Bluestone's penalty. Bluestone will remain free to seek judicial review of any future Commission order under 16 U.S.C. § 823b.

*So ordered.*