United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued April 8, 2002 Decided May 17, 2002 

 No. 94-1461

 Arkansas Electric Energy Consumers, et al.,
 Petitioners

 v.

 Federal Energy Regulatory Commission, 
 Respondent

 Arkansas Public Service Commission, et al., 
 Intervenors

 Consolidated with Nos. 
 94-1469, 94-1480, 94-1495, 94-1508, 94-1509

 On Petitions for Review of Orders of the 
 Federal Energy Regulatory Commission

 Mary W. Cochran argued the cause for petitioners. With 
her on the briefs were Paul R. Hightower, Zachary David 

Wilson, Brian Donahue, Mitchell F. Hertz, George M. Flem-
ing and Frank Spencer. William B. McKinley and James D. 
Senger entered appearances.

 David H. Coffman, Attorney, Federal Energy Regulatory 
Commission, argued the cause for respondent. With him on 
the brief were Cynthia A. Marlette, General Counsel, and 
Dennis Lane, Solicitor.

 Michael R. Fontham argued the cause for intervenors 
Entergy Services, Inc. and Louisiana Public Service Commis-
sion. With him on the brief were Noel J. Darce and John N. 
Estes III.

 Before: Edwards, Rogers and Tatel, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Rogers.

 Rogers, Circuit Judge: Arkansas Electric Energy Consum-
ers and others1 petition for review of Opinion Nos. 385 and 
385-A of the Federal Energy Regulatory Commission. In 
those opinions the Commission approved the merger of the 
Entergy and Gulf States systems under s 203 of the Federal 
Power Act ("FPA"), 16 U.S.C. s 824b, and an amendment to 
the Entergy System Agreement under FPA s 205, 16 U.S.C. 
s 824d, to add Gulf States as an Entergy Operating Company 
upon approval and consummation of the merger. See Enter-
gy Servs., Inc., Opinion No. 385, 65 FERC p 61,332 (1993) 
("Opinion No. 385"); Entergy Servs., Inc., Opinion No. 385-
A, 67 FERC p 61,192 (1994) ("Opinion No. 385-A"). Peti-
tioners principally contend that Opinion No. 385 violates 
s 205's prohibition against undue discrimination because the 
System Agreement treats Gulf States, which has no history of 
cost-sharing with respect to the Entergy system generating 
facilities, similarly to the four electric operating companies 
("EOCs")--Arkansas Power & Light Company, Louisiana 
Power & Light Company, Mississippi Power & Light Compa-
ny, and New Orleans Public Service, Inc.--which have long 
cost-sharing histories. Petitioners also contend that the Com-

__________
 1 Other petitioners are Arkansas Cities and Cooperatives, Ar-
kansas Public Service Commission, Mississippi Public Service Com-
mission, and the State of Mississippi.

mission erred in not holding an evidentiary hearing on whole-
sale electric competition before approving the merger. We 
deny the petition.

 I.

 Opinion Nos. 385 and 385-A respond to the 1992 filing by 
Entergy and Gulf States of a joint application under s 203 for 
authorization to merge their adjacent systems. Entergy 
simultaneously filed, pursuant to s 205, a proposed amend-
ment to the System Agreement to add Gulf States as an EOC 
upon approval and consummation of the merger. The back-
ground to these proceedings need not be repeated. See City 
of New Orleans v. FERC, 875 F.2d 903 (D.C. Cir. 1989); 
Mississippi Power & Light Co. v. Mississippi ex rel. Moore, 
487 U.S. 354 (1988); Mississippi Indus. v. FERC, 808 F.2d 
1525 (D.C. Cir. 1987), on rehearing, 822 F.2d 1104 (D.C. Cir. 
1987); Louisiana Pub. Serv. Comm'n v. FERC, 688 F.2d 357 
(5th Cir. 1982). We therefore turn directly to the Commis-
sion's threshold contention that petitioners have waived their 
s 205 challenge to Opinion Nos. 385 and 385-A.

 II.

 The FPA provides for rehearing of a Commission order, 
provided the request is filed within 30 days of the order. 16 
U.S.C. s 825l(a). Thereafter, a party or other person ag-
grieved has 60 days from the denial of rehearing to seek 
judicial review. Id. s 825l(b). Application for rehearing by 
the Commission is a prerequisite to seeking judicial review. 
Id. s 825l(a). No objection to the Commission's order may 
be raised on appeal to the court unless it was urged before 
the Commission on rehearing "unless there is reasonable 
ground for failure to do so." Id. s 825l(b). See FPC v. 
Colorado Interstate Gas Co., 348 U.S. 492, 497-98 (1955). 
The Commission contends that petitioners have waived their 
undue discrimination challenges to Opinion Nos. 385 and 
385-A by failing to raise them on reconsideration of the 
Hearing Order. Upon review of the record of the proceed-

ings, we conclude that, pursuant to s 825l(b), petitioners 
preserved their contentions for judicial review.

 In the order setting forth the issues to be addressed at an 
evidentiary hearing, the Commission stated, in relevant part, 
that the s 205 inquiry would "focus solely on whether the 
Operating Companies and their customers will be adversely 
affected by Gulf States' integration into the existing System 
Agreement...." Entergy Servs., Inc., Order on Applica-
tions, 62 FERC p 61,073, 61,378 (1993) ("Hearing Order"). 
The order also stated that the effect of the merger on rates 
and costs would be taken into account. Id. At this point, 
petitioners properly could rely on the Commission's adher-
ence, following the evidentiary hearing, to the requirements 
of ss 203 and 205 in addressing the merits of the System 
Agreement amendment. Because a party may be adversely 
affected if it suffers undue discrimination and the term "ad-
versely affected" has a rather indeterminate meaning in the 
abstract, it would be unreasonable to expect petitioners to 
have challenged the standard established in the Hearing 
Order before the standard had been applied. Put otherwise, 
petitioners had "reasonable ground[s]" to refrain from raising 
their contentions regarding undue discrimination until a deci-
sion on the merits was rendered. 16 U.S.C. s 825l(b).

 Upon determining that, in petitioners' view, the opinion of 
the Administrative Law Judge ("ALJ") following the eviden-
tiary hearing, Initial Decision, 64 FERC p 63,026 ("Initial 
Decision"), had blurred the distinction between ss 203 and 
205, and failed to protect them against undue discrimination 
in ratemaking, petitioners raised appropriate objections in an 
initial post-hearing brief and in a brief on exceptions to the 
Initial Decision. Similarly, petitioners raised these conten-
tions in seeking rehearing by the Commission of Opinion No. 
385. Indeed, on rehearing the Commission addressed peti-
tioners' undue discrimination contentions on the merits, never 
suggesting that petitioners had waived their contentions by 
failing to raise them in seeking rehearing of the Hearing 
Order. See, e.g., Opinion No. 385-A, 67 FERC at p 61,583.

 In now contending that petitioners are making an imper-
missible collateral attack on the "adverse effects" test estab-
lished in the Hearing Order, the Commission relies on Blue-
stone Energy Design, Inc. v. FERC, 74 F.3d 1288, 1293-94 
(D.C. Cir. 1996). The waiver issue in Bluestone, however, 
was not decided under s 825l(b); the petitioner in that case 
conceded that judicial review was foreclosed under s 825l(b) 
for failure to file a timely petition for rehearing and sought 
review under 16 U.S.C. s 823b(d)(2)(B), which provides for 
judicial review of Commission orders assessing penalties. 
The court held that s 823b(d)(2)(B) prohibited collateral at-
tacks on findings in prior Commission orders unless the 
petitioner had raised an appropriate challenge in a petition 
for rehearing. See Bluestone, 74 F.3d at 1293-94. Although 
the Hearing Order at issue here was a final order, unlike the 
liability determination in Bluestone, it did not constitute a 
ruling on the merits as to the issues that petitioners pursued 
in their request for rehearing of Opinion No. 385. Similarly, 
the Commission's reliance on ASARCO, Inc. v. FERC, 777 
F.2d 764 (D.C. Cir. 1985), is misplaced, for the petitioner in 
that case failed to raise on rehearing the principal issue for 
which it sought judicial review and did not argue that it had 
reasonable grounds for failing to do so. See id. at 773-74.

 Because petitioners have argued throughout the proceed-
ings before the Commission, on the appropriate occasions, 
that its members will be "adversely affected" unless intrasys-
tem adjustments are made, we hold that petitioners have 
preserved their ss 203 and 205 contentions for judicial review 
under 16 U.S.C. s 825l(b).

 III.

 Section 205(a) of the FPA provides that "[a]ll rates and 
charges made, demanded, or received by any public utility for 
or in connection with the sale of electric energy subject to the 
jurisdiction of the Commission ... shall be just and reason-
able, and any such rate or charge that is not just or reason-
able is hereby declared unlawful." 16 U.S.C. s 824d(a). 
Section 205(b) provides that it shall be unlawful for a public 

utility, with respect to any transmission or sale subject to the 
jurisdiction of the Commission, to "(1) make or grant any 
undue preference or advantage to any person ... or (2) 
maintain any unreasonable difference in rates, charges, ser-
vices, facilities, or in any other respect, either as between 
localities or as between classes of service." Id. s 824d(b). 
Petitioners contend that in approving the addition of Gulf 
States to the System Agreement without modifying the 
Agreement's rate formulas to reflect Gulf State's lack of prior 
contribution to the costs of the Entergy system, the Commis-
sion acted unlawfully in violation of s 205. Petitioners point 
to Opinion Nos. 234 and 2922 where, they maintain, the 
Commission set forth the principle that prevention of undue 
discrimination requires attention to historical patterns of cost-
bearing on the Entergy system. Because the EOCs share a 
common history of planning and cost-sharing for system 
generation facilities, petitioners maintain that to avoid undue 
discrimination Gulf States should not be permitted to benefit 
from the advantageous rate schedules in the System Agree-
ment after most of the depreciation costs have been paid. 
Specifically, petitioners proposed to the Commission that Gulf 
States be required to make MSS-13 payments to the "long" 
EOCs4 of approximately $80 million while receiving fuel bene-
fits from the EOCs' coal units of approximately $115-223 

__________
 2 Middle South Energy, Inc. and Middle South Services, Inc., 
31 FERC p 61,305 (1985) ("Opinion 234"), reh'g denied, Opinion 
234-A, 32 FERC p 61,425 (1993); System Energy Resources, Inc., 
Opinion No. 292, 41 FERC p 61,238 (1987), reh'g denied, Opinion 
292-A, 42 FERC p 61,091(1988). See also, City of New Orleans v. 
FERC, 875 F.2d 903, 905-06 (D.C. Cir. 1989); Mississippi Indus., 
808 F.2d 1525.

 3 MSS-1 is the rate schedule in the System Agreement govern-
ing capacity equalization payments.

 4 A company is deemed "long" when "its share of the system's 
capacity is greater than its share of energy actually generated and 
distributed by the system as a whole...." Mississippi Indus., 808 
F.2d at 1530 (citation omitted).

million, and that the EOCs, as to MSS-3,5 be given first 
priority to low-cost energy in the system pool. In sum, 
petitioners contend that in rejecting this proposal, the Com-
mission arbitrarily disregarded its precedent and the relevant 
historical setting.

 In reviewing the Commission's decisions, the court's role is 
limited to determining whether the Commission complied 
with the relevant FPA standards and demonstrated that it 
has made a reasonable decision based on substantial evidence 
in the record. See Sithe/Independence Power Partners, LP 
v. FERC, 165 F.3d 944, 948 (D.C. Cir. 1999). Section 205(b) 
prohibits only "undue" preferences and "unreasonable" differ-
ences in rates. 16 U.S.C. s 824d(b); Borough of Chambers-
burg v. FERC, 580 F.2d 573, 580 (D.C. Cir. 1978). A rate is 
not "unduly" preferential or "unreasonably" discriminatory if 
the utility can justify the disparate effect. Metropolitan 
Edison Co. v. FERC, 595 F.2d 851, 857 (D.C. Cir. 1979). In 
light of the Commission's reasoning in Opinion Nos. 385 and 
385-A, we conclude that petitioners fail to show that the 
Commission contravened s 205 in determining that the 
amended System Agreement was not unduly discriminatory.

 The Commission found, and petitioners do not dispute, that 
the merger would produce net benefits to all of the EOCs and 
to Gulf States, including significant savings of net production 
costs and non-fuel operations and management expenses. 
Opinion No. 385, 65 FERC at p p 62,475, 62,491-92. The 
Commission explained that "immediate rough production cost 
equalization, as outlined in Opinion No. 234, is not required in 
this proceeding" for two reasons. First, there is no agency 
precedent requiring it, and second, the "[a]pplicants have no 
history of joint planning and construction and, therefore, 
there has been no historic practice of maintaining rough 
production cost equalization between Gulf States and the 
[EOCs]." Id. at p 62,497. On rehearing, the Commission 
rejected the argument that the amended System Agreement 
resulted in undue discrimination against the four existing 
EOCs, noting that "[petitioners] ignore the substantial bene-

__________
 5 MSS-3 is the rate schedule in the System Agreement govern-
ing intrasystem energy exchanges.

fits Gulf States now brings to the System" and that accrue to 
each operating company. Opinion No. 385-A, 67 FERC at 
p 61,583 (citation omitted); see also id. at p 61,587. Citing 
American Elec. Power Serv. Corp., 44 FERC p 61,206, 61,745, 
reh'g denied, 45 FERC p 61,408 (1988) ("AEP"), the Commis-
sion explained that "rates for transactions among the operat-
ing company subsidiaries of a holding company are not undu-
ly discriminatory merely because they fail to exactly reflect 
the benefits contributed by various participants." Opinion 
No. 385-A, 67 FERC at p 61,587. Responding to petitioners' 
argument that Gulf States should not be allowed to benefit 
from Entergy's MSS-1 formula for capacity equalization pay-
ments because Gulf States had not contributed in the past 
toward system generating costs, the Commission rejected 
such a "narrow view" of s 205's requirements. Id. at 
p 61,583. The Commission observed that "carrying [petition-
er]s' logic to its conclusion, the Commission could never 
permit any utility that merged with the Entergy System to 
come under the System Agreement because the new company 
had never made historical contributions to the System." Id. 
Further, the Commission explained, petitioners' "arguments 
contain one more important flaw: No one has argued that the 
actual formulas in the System Agreement are themselves, or 
will become, unjust or unreasonable as a result of the merg-
er." Id. Finally, observing that "[t]he fact that an individual 
operating company will, post merger, experience cost increas-
es is not dispositive of whether the merger is consistent with 
the public interest," id., the Commission rejected petitioners' 
argument that they should not be forced to bear an increase 
in costs post-merger as being "untenable" absent a showing 
"that [a]pplicants' charges under the System Agreement, 
post-merger, are unjust or unreasonable." Id.

 Petitioners rely on Alabama Elec. Coop. v. FERC, 684 F.2d 
20, 27 (D.C. Cir. 1982), for the "central legal proposition" that 
applying the same rate to two groups of dissimilarly situated 
customers may violate s 205's prohibition against undue dis-
crimination. However, in that case the court recognized that 
"even under a purely cost-based rate scheme, absolute equiv-
alence of overall rates of return among similar customer 

groups is little more than an ideal." Id. at 28. Further, the 
court was addressing discriminatory treatment where a utility 
sought to charge identical rates even though its costs to serve 
each group of customers markedly differed, resulting in sig-
nificant disparities in rates of return. Id. at 27-28. No such 
circumstances are present here. To the extent petitioners 
contend that the Commission misapplied its precedents in 
approving the amended System Agreement, their contention 
is meritless. They make no response in their Reply Brief to 
the Commission's statements in its brief that the precedents 
have little bearing on the issues. Thus, the Commission 
points out that its reference in Opinion No. 385-A, 67 FERC 
at p 61,587, to AEP was for the proposition that whether a 
system-wide rate is unduly discriminatory turns on whether 
the rate fairly allocates costs among subsidiaries, not whether 
the rate properly reflects the share of services contributed. 
The Commission further points out that in Mississippi In-
dus., 808 F.2d at 1565-66, the court rejected the proposition 
urged by petitioners that AEP's approval of a cost allocation 
supports mandating such an allocation here. Any suggestion 
by petitioners that the Commission's quotation from Utah 
Power & Light Co., 45 FERC p 61,095 (1988), indicates 
confusion about whether it was resolving or deferring the 
s 205 issue for the amended System Agreement, see Opinion 
No. 385, 65 FERC at p p 62,474-75, is belied by the Commis-
sion's findings on the s 205 issue. E.g., id. at p 62,464. 
Finally, as the Commission notes, Northeast Utils. Serv. Co., 
50 FERC p 61,266 (1990), suspending a proposed rate, pro-
vides no guidance here.

 As evidence of undue discrimination, petitioners point to 
their lost opportunity to benefit from open market sales of 
excess capacity, instead of being obligated under the System 
Agreement to afford Gulf States access to such capacity 
through the system pool at below-market rates. They also 
point to the loss of their ability to take advantage of deprecia-
tion avoidance, whereby, for example, Arkansas Electric En-
ergy Consumers asserts that it has fully depreciated generat-
ing plants, the front-end costs of which have been borne by 
the EOCs' ratepayers. Yet these circumstances do not dem-

onstrate unduly disparate treatment between Gulf States and 
the Entergy EOCs with respect to intrasystem energy ex-
changes or capacity equalization payments. As the ALJ 
pointed out, petitioners ignore the generation that Gulf States 
brings to the Entergy power pool. Initial Decision, 64 
FERC at p p 65,102-03. The merger also gives the EOCs 
access to Gulf States' facilities without their having to pay 
equalization charges related to prior depreciation expense.

 Nor do petitioners show exceptional cost circumstances 
here (namely, enormous disparities in per-megawatt costs) as 
were at issue in Opinion Nos. 234 and 292, when the Commis-
sion imposed a rough equalization of each operating compa-
ny's investment in the system's nuclear generating facilities 
due to exorbitant and unforeseen cost overruns at the Grand 
Gulf facility. See Mississippi Indus., 808 F.2d at 1530. The 
Commission was not confronted here with the undue discrimi-
nation that it sought to remedy in Opinion Nos. 234 and 292, 
when Arkansas Power & Light Co. sought exemption from 
Grand Gulf's costs.

 Nor, contrary to petitioners' contention, does the Commis-
sion's rejection of petitioners' proposed modifications to the 
amended System Agreement indicate that the Commission 
unlawfully applied a s 203 standard to a s 205 issue. Al-
though the Commission's rationale in Opinion No. 385 for 
rejecting petitioners' MSS-1 and MSS-3 proposals is at times 
turgid, see, e.g., Opinion No. 385, 65 FERC at p p 62,475, 
62,504, the Commission's explanation on rehearing provides 
sufficient support for its conclusions. As the Commission 
stated on rehearing, petitioners initially framed the MSS-1 
issue in s 203 terms by contending during the administrative 
proceedings that "because they would have to bear an in-
crease in costs (which, in their view is unjust and unreason-
able), the Commission could not approve the merger as 
consistent with the public interest without [petitioner]s' re-
spective so-called 'hold-harmless' provisions." Opinion No. 
385-A, 67 FERC at p 61,586 (emphasis in original). Hence, 
in addressing this concern, the Commission understandably 
explained that petitioners' proposed modifications were not 
required to ensure that the merger complied with the public 

interest. Id. Petitioners made similar contentions with re-
spect to a proposed "hold-harmless" provision for the MSS-3 
schedule. The Commission properly rejected this modifica-
tion on the ground that it would unduly discriminate against 
Gulf States "because it requires Gulf States to contribute to 
the MSS-3 energy pool on the same basis as the existing 
Operating Companies, but it ranks Gulf States last in line of 
priority for taking energy from the MSS-3 pool." Opinion 
No. 385, 65 FERC at p 62,506. More generally, given the 
simultaneous and related filing of the Entergy merger appli-
cation under s 203, the Commission could reasonably evalu-
ate the merits of the System Agreement amendment "in the 
context of the merger," Opinion No. 385-A, 67 FERC at 
p 61,586, such that the fact that all parties would experience 
net benefits from the merger provided substantial evidence 
for finding that there would be no undue discrimination under 
s 205.

 Therefore, because the Commission adhered to established 
practice on the Entergy System in subjecting Gulf States to 
virtually the same System Agreement terms as the EOCs, 
and petitioners fail to show, given the relationship of the 
System Agreement amendment to the merger, that the Com-
mission's decision was unreasonable, not based on substantial 
evidence in the record, or otherwise unclear in the path of its 
reasoning, see Sithe, 165 F.3d at 948, their contentions under 
ss 203 and 205 fail.

 IV.

 Petitioners' contention that the Commission improperly 
disposed of the competition issue without an evidentiary 
hearing is also unavailing. Petitioners identify no material 
issue of fact that could not be properly resolved by the 
Commission on the written record and thus fail to show that 
its decision to forego an evidentiary hearing was an abuse of 
discretion. See Moreau v. FERC, 982 F.2d 556, 568 (D.C. 
Cir. 1993).

 Consistent with the public interest standard for mergers, 
16 U.S.C. s 824b(a); Wabash Valley Power Ass'n v. FERC, 

268 F.3d 1105, 1108 (D.C. Cir. 2001), the Commission identi-
fied the merger's benefits as including the expansion of 
Entergy's third-party open access tariff ("OATT") to Gulf 
States' service territory in perpetuity. Opinion No. 385, 65 
FERC at p 62,464. In the Hearing Order, the Commission 
stated that expansion of Entergy's OATT would "adequately 
mitigate any increase in market power in the relevant geo-
graphic and product market" that might result from the 
merger. Hearing Order, 62 FERC at p 61,374. The Com-
mission explained on rehearing of the Hearing Order that 
extension of the OATT to Gulf States' service territory could 
be expected to allow competitors access to additional generat-
ing capacity to serve petitioner Arkansas Cities and Coopera-
tive's market. See Order Denying Rehearing of Hearing 
Order, 64 FERC at p 61,011. As the court stated in Louisi-
ana Energy and Power Auth. v. FERC, 141 F.3d 364, 370 
(D.C. Cir. 1998), "[t]his is the kind of reasonable agency 
prediction about the future impact of its own regulatory 
policies to which we ordinarily defer." The Commission's 
reasonable conclusion regarding the expansion of Entergy's 
OATT is also dispositive of petitioners' contention that the 
Commission failed to give appropriate consideration to the 
Herfendahl-Hirschmann Index of Concentration Ratios 
("HHI").6 See Hearing Order, 62 FERC at p p 61,374-75. 
Given the ease of market entry provided by the expansion of 
the Entergy OATT, the Commission need not have held a 
hearing because, as petitioners contend, the merger would 
result in an increased HHI.7 See Order Denying Rehearing 

__________
 6 The Herfindahl-Hirschman Index refers to a measurement of 
market concentration that "is calculated by summing the squares of 
the individual market shares of all the participants." Hearing 
Order, 62 FERC at 61,374 (referring to s 1.5 of the 1992 Merger 
Guidelines of the Department of Justice and the Federal Trade 
Commission).

 7 The Commission states in its brief that defects in Entergy's 
OATT that were identified in Cajun Elec. Power Coop. v. FERC, 28 
F.3d 173 (D.C. Cir. 1994), have been eliminated, citing Entergy 
Servs. Inc., 85 FERC p 61,163, 61,647 (1998). We express no 
opinion on the matter.

of Hearing Order, 64 FERC at p 61,011. The Commission's 
finding that no petitioner had demonstrated pre-merger com-
petition between Gulf States and Entergy Systems to be 
more than de minimus, see Opinion No. 385-A, 62 FERC at 
p 61,374, is supported by the record, further indicating that 
the Commission did not abuse its discretion in declining to 
conduct an evidentiary hearing on the wholesale competition 
issue.

 Accordingly, we deny the petitions for review.