# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued December 13, 2012   Decided July 23, 2013

No. 11-1283

MOUSSA I. KOUROUMA,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

---

On Petition for Review of an Order of
the Federal Energy Regulatory Commission

---

*Paul B. Mohler* argued the cause for petitioner. With him on the briefs were *Joseph H. Fagan*, *Julie D. Hutchings*, and *Stephen L. Markus*.

*Robert M. Kennedy*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Tony West*, Assistant Attorney General, U.S. Department of Justice at the time the brief was filed, *Mark B. Stern*, and *Lindsey Powell*, Attorneys, and *Robert H. Solomon*, Solicitor, Federal Energy Regulatory Commission.

Before: GARLAND, *Chief Judge*, ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: In a summary disposition, the Federal Energy Regulatory Commission (FERC) ordered energy trader Moussa Kourouma to pay a $50,000 civil penalty because he had made false statements and material omissions in forms he filed with the Commission and a market operator the Commission regulates. For the reasons set forth below, we deny Kourouma's challenge to the order.

I

The Federal Power Act (FPA) grants FERC the authority to regulate the activity of traders who participate in energy markets. *See* 16 U.S.C. §§ 791a-825r. To ensure the integrity and smooth functioning of the markets, FERC has promulgated a range of rules, one of which is 18 C.F.R. § 35.41(b), or "Market Behavior Rule 3," which states:

> A Seller must provide accurate and factual information and not submit false or misleading information, or omit material information, in any communication with the Commission, Commission-approved market monitors, Commission-approved regional transmission organizations, Commission-approved independent system operators, or jurisdictional transmission providers, unless Seller exercises due diligence to prevent such occurrences.

18 C.F.R. § 35.41(b). The definition of "Seller" includes "any person that . . . seeks authorization to engage in sales for resale of electric energy, capacity or ancillary services at market-based rates . . . ." 18 C.F.R. § 35.36(a)(1). In other words, energy traders like Kourouma may not make false or misleading submissions to the Commission or to the other types of entities named in the regulation.

From January 2008 to March 2009, Kourouma worked as a trader in various energy markets with Energy Endeavors LP. When he began with Energy Endeavors, Kourouma signed an employment contract that contained a non-compete clause that committed him to trade only for Energy Endeavors during his time at the firm and for two years after leaving the firm. In early 2009, Kourouma grew concerned over the business prospects of Energy Endeavors and formed his own trading firm, despite the terms of his contract. On February 18, 2009, Kourouma incorporated Quntum Energy LLC, using his daughter's name as Quntum's registered agent in place of his own. In order to participate in the energy markets, Kourouma filed applications with FERC and a regional transmission organization that operates electricity trading markets, PJM Interconnection LLC, in March 2009. Kourouma did not include his name on any of the forms he filed with FERC or PJM. In the form filed with FERC, he again concealed his role in Quntum by using his daughter's name in place of his own. In the form filed with PJM, he claimed that a friend was Quntum's manager, which was not true.

Energy Endeavors soon discovered Kourouma's activities with Quntum; its parent company sought enforcement of his employment contract, *see Crane Energy, Inc. v. Kourouma*, No. 4512-VCS (Del. Ch. June 5, 2009), and protested the application Quntum filed with FERC. FERC conducted an investigation into Kourouma's activities and issued an order stating that he had submitted false and misleading forms to FERC and PJM in violation of 18 C.F.R. § 35.41(b) and directing him to show cause why a $50,000 civil penalty was not appropriate. *See Kourouma*, 134 FERC ¶ 61,105 (2011).

The order also informed Kourouma that he could choose between two procedural options. *See* 16 U.S.C. § 823b(d)(1); *see also id.* § 825o-1 (requiring FERC to follow the 16 U.S.C. § 823b(d) procedures). He could elect for FERC to "promptly assess [the] penalty, by order," a choice which would immediately vest him with appeal rights. *Id.* § 823b(d)(3)(A); *see id.* § 823b(d)(1), (2)(B). Or he could elect for the Commission to assess a penalty only "after a determination of violation has been made on the record after an opportunity for an agency hearing pursuant to section 554 of Title 5 before an administrative law judge . . . ." *Id.* § 823b(d)(2)(A). Any resulting assessment order "shall include the administrative law judge's findings and the basis for [the] assessment." *Id.*

In response to FERC's order, Kourouma submitted an affidavit in which he admitted that he falsely used the name of his daughter on a form submitted to FERC and the name of a friend on a form submitted to PJM instead of his own name. He explained that he used those names "in order to avoid making Energy Endeavors aware" of his involvement in Quntum.

Regarding his procedural options, Kourouma urged the Commission to dismiss the case against him by summary disposition. If the Commission chose not to dismiss the charges, he asked for an administrative hearing. The Commission determined the matter fit for summary disposition, but against Kourouma, not for him. Relying on the admissions of false filings Kourouma made in his affidavit, the Commission held that Kourouma violated Market Behavior Rule 3 and assessed a $50,000 civil penalty payable over five years to accommodate his financial condition.

In this petition for review, Kourouma alleges that FERC committed procedural and substantive errors. We have jurisdiction under 16 U.S.C. § 823b(d)(2)(B). *See Bluestone Energy Design, Inc. v. FERC*, 74 F.3d 1288, 1293 (D.C. Cir. 1996).

II

We first consider Kourouma's argument that he was entitled to an administrative hearing under 16 U.S.C. § 823b(d)(2)(A).

We agree with FERC that Kourouma's admissions supported summary disposition without a hearing. FERC Rule of Practice and Procedure 217 provides that when "there is no genuine issue of fact material to the decision of a proceeding . . . , [FERC] may summarily dispose of all or part of the proceeding." 18 C.F.R. § 385.217(b). That rule does not run afoul of § 823b. We have routinely recognized that an agency need not hold an administrative hearing when no material facts are in dispute. As we stated in *Citizens for Allegan County, Inc. v. Federal Power Commission*,

> the right of opportunity for hearing does not require a procedure that will be empty sound and show, signifying nothing. The precedents establish, for example, that no evidentiary hearing is required where there is no dispute on the facts and the agency proceeding involves only a question of law.

414 F.2d 1125, 1128 (D.C. Cir. 1969) (citations omitted); *see also, e.g.*, *Moreau v. FERC*, 982 F.2d 556, 568 (D.C. Cir. 1993) (holding that the Natural Gas Act's hearing provision, 15 U.S.C. § 717f, does not require a hearing "when there are no disputed issues of material fact"); *Pa. Pub. Util. Comm'n*

*v. FERC*, 881 F.2d 1123, 1126 (D.C. Cir. 1989) (stating that "we have often held . . . that a formal trial-type hearing is unnecessary where there are no material facts in dispute" (citations omitted)). Here, after receiving Kourouma's admissions, FERC faced only a question of law: Did Kourouma's admitted actions amount to a violation of Market Behavior Rule 3? No evidentiary hearing was needed.

We have never had occasion to consider this issue with regard to § 823b(d), but the principle upon which we rely is well-established. "Even when an agency is required by statute or by the Constitution to provide an oral evidentiary hearing, it need do so only if there exists a dispute concerning a material fact." 1 RICHARD J. PIERCE JR., ADMINISTRATIVE LAW TREATISE § 8.3 (5th ed. 2010) (citing, *e.g.*, *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609 (1973)). This holds even where, as here, the governing statute requires that final civil penalty orders "shall include the administrative law judge's findings." 16 U.S.C. § 823b(d)(2)(A). When the regulated party's own admissions make clear that no material facts are in dispute, it is unnecessary to require a judge to recite these facts as "findings" after a hearing. As we have already stated, Kourouma's affidavit makes the violation clear. In the affidavit he submitted to FERC in response to the order to show cause, Kourouma admitted that he falsified and omitted multiple names on his forms, and that he had kept his involvement in Quntum a secret to avoid alerting Energy Endeavors to his violation of the non-compete. Kourouma's admissions resolved all disputes of material fact, making an evidentiary hearing unnecessary.

## III

Kourouma next argues that FERC erred because there was no showing that he had any intent to deceive FERC or

PJM with his false filings. But intent to deceive is not an element of Market Behavior Rule 3. The Rule's plain text lacks any reference to intent and forgives false or misleading submissions only if they are made inadvertently despite the filer's due diligence to avoid such errors. The text provides no hint that a seller would be in the clear if, for example, he submitted false information recklessly, but without ill will. To the contrary, the fact that only due diligence excuses a false filing implies even negligent misrepresentations may be actionable. Contrary to Kourouma's assertion, so read, Market Behavior Rule 3 does not subject filers like Kourouma to strict liability, but reserves punishment for those who do not act with requisite care when submitting information to FERC. Because Kourouma's actions were worse than careless, FERC reasonably concluded that he violated Market Behavior Rule 3.*

Kourouma argues as well that he had no notice that FERC would read the Rule so broadly and might move against those who lacked intent to deceive FERC or regional

---

* Without a requirement of intent, Kourouma argues, the Rule fails to provide constitutionally adequate notice to regulated parties of what is forbidden and invites discriminatory enforcement. *See Hill v. Colorado*, 530 U.S. 703, 732-33 (2000); *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). But these constitutional challenges to a garden-variety ban on making false statements to regulators are meritless. As discussed above, the Rule's clear terms provide sufficient notice to regulated parties of what conduct the Rule prohibits, and those clear enforcement parameters prevent FERC from engaging in unconstitutionally discriminatory enforcement. To the extent Kourouma argues that he received harsher treatment because he decided to withdraw his FERC application rather than amend it, his argument is unconvincing. There is no evidence that his decision to withdraw his FERC application resulted in disparate treatment.

transmission organizations like PJM. Indeed, although we typically defer to agencies' interpretations of their own regulations, we also require agencies to provide fair notice of the actions they consider unlawful. *See, e.g.*, *PMD Produce Brokerage Corp. v. USDA*, 234 F.3d 48, 52 (D.C. Cir. 2000). This ensures that "a regulated party acting in good faith" will be able "to identify, with ascertainable certainty, the standards with which the agency expects parties to conform." *Star Wireless, LLC v. FCC*, 522 F.3d 469, 473 (D.C. Cir. 2008) (internal quotation marks omitted).

Not only does the plain language of § 35.41(b) provide ample notice that FERC will enforce the Rule without requiring intent, but the Commission's prior public statements regarding § 35.41(b) confirm the point as well. For instance, in 2004, FERC considered but rejected the option of adding an "express intent requirement" to § 35.41(b). *See Investigation of Terms and Conditions of Pub. Util. Market-Based Rate Authorizations*, 107 FERC ¶ 61,175, 61,715 (2004). FERC eschewed this proposal, leaving the due diligence safe harbor as the only exception to the rule. *See id.* And although the initial promulgation of Market Behavior Rule 3 stated that the Rule was "prohibit[ing] the knowing submission of false or misleading data," that statement was intended to clarify that "inadvertent submission of inaccurate or incomplete information will not be sanctioned." *Investigation of Terms and Conditions of Pub. Util. Market-Based Rate Authorizations*, 105 FERC ¶ 61,218, 62,157 (2003). Moreover, the 2004 commentary on the Rule made clear that FERC's goal was to ensure that inadvertent false submissions would not be penalized. *See* 107 FERC ¶ 61,175, 61,715. Kourouma's false filings were not inadvertent.

9

IV

Next, we briefly turn to three arguments that sound under the Administrative Procedure Act. We find each of them to lack merit.

First, Kourouma claims that FERC failed to follow its own summary disposition rule that evidence must be "viewed in light most favorable" to the non-moving party. *See Phillips Pipe Line Co.*, 67 FERC ¶ 63,002, 65,002 (1994). Departing from precedent without explanation is a form of capricious agency action. *See, e.g.*, *Lone Mountain Processing, Inc. v. Sec'y of Labor*, 709 F.3d 1161 (D.C. Cir. 2013). But the summary disposition rule requires only that FERC draw all "reasonable" inferences in Kourouma's favor. *See, e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Kourouma wishes that FERC would simply accept his explanation that his actions were inadvertent. *See* Pet'r's Br. 35. But as we have already shown, such an inference could not be reasonable.

Second, at a late stage in the administrative process, Kourouma sought to introduce new evidence, and he argues that FERC's decision to exclude it was an abuse of discretion. But FERC Rule of Practice and Procedure 213 prohibits respondents from submitting additional answers, s*ee* 18 C.F.R. § 385.213(a)(2), and it was no abuse of discretion to adhere to the rule.

Third, Kourouma argues that FERC failed to support its imposition of a $50,000 penalty with substantial evidence, thus violating 5 U.S.C. § 706(2)(E). But FERC's decision to impose a $50,000 penalty is rationally supported by multiple pieces of evidence. FERC highlighted the fact that Kourouma acted deliberately, and remarked upon the seriousness of the

threat posed by Kourouma's actions to transparent market operations. In particular, FERC pointed to the inability to properly evaluate Kourouma's misleading forms and to the signal his actions sent about the integrity of the energy market. The record also belies Kourouma's argument that FERC failed to consider his circumstances in imposing its final order. In fact, FERC tailored Kourouma's payment schedule to accommodate his problems with cash flow by allowing him to pay his penalty over a period of five years. Based on its judgment regarding the seriousness of Kourouma's violation – especially that, in the Commission's judgment, Kourouma had "knowingly and deliberately" filed false information, *Kourouma*, 135 FERC ¶ 61,245, 62,397 – and the mitigating factor of his financial position, the Commission reasonably arrived at the decision to impose a $50,000 penalty, payable over five years.

V

Finally, we turn to Kourouma's argument that FERC enhanced his penalty based on the goal of promoting general deterrence, in violation of *Clifton Power Corp. v. FERC*, 88 F.3d 1258, 1267 (D.C. Cir. 1996). Kourouma misreads *Clifton Power*. In that case, while expressly leaving the issue open, we questioned whether FERC could increase the dollar amount of a penalty recommended by an ALJ in order to deter other market participants. *See id.* at 1271. In contrast, in this case, Kourouma makes no showing that FERC increased his penalty to promote general deterrence. Indeed, the record shows that FERC only considered general deterrence when deciding *whether* to impose a monetary penalty, not when determining its amount. *See Kourouma*, 135 FERC ¶ 61,245, 62,398. Thus, our unresolved discussion of general deterrence in *Clifton Power* is inapposite.

11

## VI

For the foregoing reasons, the petition for review is denied.

*So ordered.*