**ARKANSAS ELECTRIC ENERGY CONSUMERS, et al., Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Arkansas Public Service Commission, et al., Intervenors.**

**Nos. 94–1461, 94–1469, 94–1480, 94–1495, 94–1508 and 94–1509.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 8, 2002.

Decided May 17, 2002.

Mary W. Cochran argued the cause for petitioners. With her on the briefs were Paul R. Hightower, Zachary David Wilson, Brian Donahue, Mitchell F. Hertz, George M. Fleming and Frank Spencer. William B. McKinley and James D. Senger entered appearances.

David H. Coffman, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were Cynthia A. Marlette, General Counsel, and Dennis Lane, Solicitor.

Michael R. Fontham argued the cause for intervenors Entergy Services, Inc. and Louisiana Public Service Commission. With him on the brief were Noel J. Darce and John N. Estes III.

Before: EDWARDS, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Arkansas Electric Energy Consumers and others[1] petition for review of Opinion Nos. 385 and 385–A of the Federal Energy Regulatory Commission. In those opinions the Commission approved the merger of the Entergy and Gulf States systems under § 203 of the Federal Power Act ("FPA"), 16 U.S.C. § 824b, and an amendment to the Entergy System Agreement under FPA § 205, 16 U.S.C. § 824d, to add Gulf States as an Entergy Operating Company upon approval and consummation of the merger. *See Entergy Servs., Inc.,* Opinion No. 385, 65 FERC ¶ 61,332, 1993 WL 609691 (1993) (*"Opinion No. 385"*); *Entergy Servs., Inc.,* Opinion No. 385–A, 67 FERC ¶ 61,192, 1994 WL 196212 (1994) (*"Opinion No. 385–A"*). Petitioners principally contend that *Opinion*

*No. 385* violates § 205's prohibition against undue discrimination because the System Agreement treats Gulf States, which has no history of cost-sharing with respect to the Entergy system generating facilities, similarly to the four electric operating companies ("EOCs")—Arkansas Power & Light Company, Louisiana Power & Light Company, Mississippi Power & Light Company, and New Orleans Public Service, Inc.—which have long cost-sharing histories. Petitioners also contend that the Commission erred in not holding an evidentiary hearing on wholesale electric competition before approving the merger. We deny the petition.

**I.**

Opinion Nos. 385 and 385–A respond to the 1992 filing by Entergy and Gulf States of a joint application under § 203 for authorization to merge their adjacent systems. Entergy simultaneously filed, pursuant to § 205, a proposed amendment to the System Agreement to add Gulf States as an EOC upon approval and consummation of the merger. The background to these proceedings need not be repeated. *See City of New Orleans v. FERC,* 875 F.2d 903 (D.C.Cir.1989); *Mississippi Power & Light Co. v. Mississippi ex rel. Moore,* 487 U.S. 354, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988); *Mississippi Indus. v. FERC,* 808 F.2d 1525 (D.C.Cir.1987), *on rehearing,* 822 F.2d 1104 (D.C.Cir.1987); *Louisiana Pub. Serv. Comm'n v. FERC,* 688 F.2d 357 (5th Cir.1982). We therefore turn directly to the Commission's threshold contention that petitioners have waived their § 205 challenge to Opinion Nos. 385 and 385–A.

**II.**

The FPA provides for rehearing of a Commission order, provided the request is

---

**1.** Other petitioners are Arkansas Cities and Cooperatives, Arkansas Public Service Commission, Mississippi Public Service Commission, and the State of Mississippi.

filed within 30 days of the order. 16 U.S.C. § 825*l*(a). Thereafter, a party or other person aggrieved has 60 days from the denial of rehearing to seek judicial review. *Id.* § 825*l*(b). Application for rehearing by the Commission is a prerequisite to seeking judicial review. *Id.* § 825*l*(a). No objection to the Commission's order may be raised on appeal to the court unless it was urged before the Commission on rehearing "unless there is reasonable ground for failure to do so." *Id.* § 825*l*(b). *See FPC v. Colorado Interstate Gas Co.,* 348 U.S. 492, 497–98, 75 S.Ct. 467, 470–71, 99 L.Ed. 583 (1955). The Commission contends that petitioners have waived their undue discrimination challenges to Opinion Nos. 385 and385–A by failing to raise them on reconsideration of the Hearing Order. Upon review of the record of the proceedings, we conclude that, pursuant to § 825*l*(b), petitioners preserved their contentions for judicial review.

■ In the order setting forth the issues to be addressed at an evidentiary hearing, the Commission stated, in relevant part, that the § 205 inquiry would "focus solely on whether the Operating Companies and their customers will be adversely affected by Gulf States' integration into the existing System Agreement...." *Entergy Servs., Inc.,* Order on Applications, 62 FERC ¶ 61,073, 61,378, 1993 WL 52670 (1993) (*"Hearing Order"*). The order also stated that the effect of the merger on rates and costs would be taken into account. *Id.* At this point, petitioners properly could rely on the Commission's adherence, following the evidentiary hearing, to the requirements of §§ 203 and 205 in addressing the merits of the System Agreement amendment. Because a party may be adversely affected if it suffers undue discrimination and the term "adversely affected" has a rather indeterminate meaning in the abstract, it would be unreasonable to expect petitioners to have challenged the standard established in the Hearing Order before the standard had been applied. Put otherwise, petitioners had "reasonable ground[s]" to refrain from raising their contentions regarding undue discrimination until a decision on the merits was rendered. 16 U.S.C. § 825*l*(b).

Upon determining that, in petitioners' view, the opinion of the Administrative Law Judge ("ALJ") following the evidentiary hearing, *Initial Decision,* 64 FERC ¶ 63,026, 1993 WL 566270 (*"Initial Decision"*), had blurred the distinction between §§ 203 and 205, and failed to protect them against undue discrimination in ratemaking, petitioners raised appropriate objections in an initial post-hearing brief and in a brief on exceptions to the *Initial Decision.* Similarly, petitioners raised these contentions in seeking rehearing by the Commission of *Opinion No. 385.* Indeed, on rehearing the Commission addressed petitioners' undue discrimination contentions on the merits, never suggesting that petitioners had waived their contentions by failing to raise them in seeking rehearing of the Hearing Order. *See, e.g., Opinion No. 385–A,* 67 FERC at 61,583.

In now contending that petitioners are making an impermissible collateral attack on the "adverse effects" test established in the Hearing Order, the Commission relies on *Bluestone Energy Design, Inc. v. FERC,* 74 F.3d 1288, 1293–94 (D.C.Cir. 1996). The waiver issue in *Bluestone,* however, was not decided under § 825*l*(b); the petitioner in that case conceded that judicial review was foreclosed under § 825*l*(b) for failure to file a timely petition for rehearing and sought review under 16 U.S.C. § 823b(d)(2)(B), which provides for judicial review of Commission orders assessing penalties. The court held that § 823b(d)(2)(B) prohibited collateral attacks on findings in prior Commission or-

ders unless the petitioner had raised an appropriate challenge in a petition for rehearing. *See Bluestone,* 74 F.3d at 1293–94. Although the Hearing Order at issue here was a final order, unlike the liability determination in *Bluestone,* it did not constitute a ruling on the merits as to the issues that petitioners pursued in their request for rehearing of Opinion No. 385. Similarly, the Commission's reliance on *ASARCO, Inc. v. FERC,* 777 F.2d 764 (D.C.Cir.1985), is misplaced, for the petitioner in that case failed to raise on rehearing the principal issue for which it sought judicial review and did not argue that it had reasonable grounds for failing to do so. *See id.* at 773–74.

Because petitioners have argued throughout the proceedings before the Commission, on the appropriate occasions, that its members will be "adversely affected" unless intrasystem adjustments are made, we hold that petitioners have preserved their §§ 203 and 205 contentions for judicial review under 16 U.S.C. § 825*l*(b).

### III.

Section 205(a) of the FPA provides that "[a]ll rates and charges made, demanded, or received by any public utility for or in connection with the sale of electric energy subject to the jurisdiction of the Commission ... shall be just and reasonable, and any such rate or charge that is not just or reasonable is hereby declared unlawful."

16 U.S.C. § 824d(a). Section 205(b) provides that it shall be unlawful for a public utility, with respect to any transmission or sale subject to the jurisdiction of the Commission, to "(1) make or grant any undue preference or advantage to any person ... or (2) maintain any unreasonable difference in rates, charges, services, facilities, or in any other respect, either as between localities or as between classes of service." *Id.* § 824d(b). Petitioners contend that in approving the addition of Gulf States to the System Agreement without modifying the Agreement's rate formulas to reflect Gulf State's lack of prior contribution to the costs of the Entergy system, the Commission acted unlawfully in violation of § 205. Petitioners point to Opinion Nos. 234 and 292[2] where, they maintain, the Commission set forth the principle that prevention of undue discrimination requires attention to historical patterns of cost-bearing on the Entergy system. Because the EOCs share a common history of planning and cost-sharing for system generation facilities, petitioners maintain that to avoid undue discrimination Gulf States should not be permitted to benefit from the advantageous rate schedules in the System Agreement after most of the depreciation costs have been paid. Specifically, petitioners proposed to the Commission that Gulf States be required to make MSS–1[3] payments to the "long" EOCs[4] of approximately $80 million while receiving fuel benefits from the EOCs' coal units of approximately $115–223 million, and that

---

**2.** *Middle South Energy, Inc. and Middle South Services, Inc.,* 31 FERC ¶ 61,305, 0085 WL 547104 (1985) (*"Opinion 234"*), *reh'g denied, Opinion 234–A,* 32 FERC ¶ 61,425, 1985 WL 67451 (1993); *System Energy Resources, Inc.,* Opinion No. 292, 41 FERC ¶ 61,238 (1987), *reh'g denied, Opinion 292–A,* 42 FERC ¶ 61,-091(1988). *See also, City of New Orleans v. FERC,* 875 F.2d 903, 905–06 (D.C.Cir.1989); *Mississippi Indus.,* 808 F.2d 1525.

**3.** MSS–1 is the rate schedule in the System Agreement governing capacity equalization payments.

**4.** A company is deemed "long" when "its share of the system's capacity is greater than its share of energy actually generated and distributed by the system as a whole...." *Mississippi Indus.,* 808 F.2d at 1530 (citation omitted).

the EOCs, as to MSS–3,[5] be given first priority to low-cost energy in the system pool. In sum, petitioners contend that in rejecting this proposal, the Commission arbitrarily disregarded its precedent and the relevant historical setting.

■■■ In reviewing the Commission's decisions, the court's role is limited to determining whether the Commission complied with the relevant FPA standards and demonstrated that it has made a reasonable decision based on substantial evidence in the record. *See Sithe/Independence Power Partners, LP v. FERC,* 165 F.3d 944, 948 (D.C.Cir.1999). Section 205(b) prohibits only "undue" preferences and "unreasonable" differences in rates. 16 U.S.C. § 824d(b); *Boroughs of Chambersburg v. FERC,* 580 F.2d 573, 577 (D.C.Cir. 1978). A rate is not "unduly" preferential or "unreasonably" discriminatory if the utility can justify the disparate effect. *Metropolitan Edison Co. v. FERC,* 595 F.2d 851, 857 (D.C.Cir.1979). In light of the Commission's reasoning in Opinion Nos. 385 and 385–A, we conclude that petitioners fail to show that the Commission contravened § 205 in determining that the amended System Agreement was not unduly discriminatory.

The Commission found, and petitioners do not dispute, that the merger would produce net benefits to all of the EOCs and to Gulf States, including significant savings of net production costs and nonfuel operations and management expenses. *Opinion No. 385,* 65 FERC at 62,475, 62,-491–92. The Commission explained that "immediate rough production cost equalization, as outlined in Opinion No. 234, is not required in this proceeding" for two reasons. First, there is no agency precedent requiring it, and second, the "[a]ppli-

cants have no history of joint planning and construction and, therefore, there has been no historic practice of maintaining rough production cost equalization between Gulf States and the [EOCs]." *Id.* at 62,497. On rehearing, the Commission rejected the argument that the amended System Agreement resulted in undue discrimination against the four existing EOCs, noting that "[petitioners] ignore the substantial benefits Gulf States now brings to the System" and that accrue to each operating company. *Opinion No. 385–A,* 67 FERC at 61,583 (citation omitted); *see also id.* at 61,587. Citing *American Elec. Power Serv. Corp.,* 44 FERC ¶ 61,206, 61,745, 1988 WL 391134, *reh'g denied,* 45 FERC ¶ 61,408, 1988 WL 246750 (1988) (*"AEP"*), the Commission explained that "rates for transactions among the operating company subsidiaries of a holding company are not unduly discriminatory merely because they fail to exactly reflect the benefits contributed by various participants." *Opinion No. 385–A,* 67 FERC at 61,587. Responding to petitioners' argument that Gulf States should not be allowed to benefit from Entergy's MSS–1 formula for capacity equalization payments because Gulf States had not contributed in the past toward system generating costs, the Commission rejected such a "narrow view" of § 205's requirements. *Id.* at 61,583. The Commission observed that "carrying [petitioner]s' logic to its conclusion, the Commission could never permit any utility that merged with the Entergy System to come under the System Agreement because the new company had never made historical contributions to the System." *Id.* Further, the Commission explained, petitioners' "arguments contain one more important flaw: No one has argued that the

---

**5.** MSS–3 is the rate schedule in the System Agreement governing intrasystem energy ex-

changes.

actual formulas in the System Agreement are themselves, or will become, unjust or unreasonable as a result of the merger." *Id.* Finally, observing that "[t]he fact that an individual operating company will, post merger, experience cost increases is not dispositive of whether the merger is consistent with the public interest," *id.*, the Commission rejected petitioners' argument that they should not be forced to bear an increase in costs post-merger as being "untenable" absent a showing "that [a]pplicants' charges under the System Agreement, post-merger, are unjust or unreasonable." *Id.*

Petitioners rely on *Alabama Elec. Coop. v. FERC*, 684 F.2d 20, 27 (D.C.Cir.1982), for the "central legal proposition" that applying the same rate to two groups of dissimilarly situated customers may violate § 205's prohibition against undue discrimination. However, in that case the court recognized that "even under a purely cost-based rate scheme, absolute equivalence of overall rates of return among similar customer groups is little more than an ideal." *Id.* at 28. Further, the court was addressing discriminatory treatment where a utility sought to charge identical rates even though its costs to serve each group of customers markedly differed, resulting in significant disparities in rates of return. *Id.* at 27–28. No such circumstances are present here. To the extent petitioners contend that the Commission misapplied its precedents in approving the amended System Agreement, their contention is meritless. They make no response in their Reply Brief to the Commission's statements in its brief that the precedents have little bearing on the issues. Thus, the Commission points out that its reference in *Opinion No. 385–A*, 67 FERC at 61,587, to *AEP* was for the proposition that whether a system-wide rate is unduly discriminatory turns on whether the rate fairly allocates costs among subsidiaries, not whether the rate properly reflects the share of services contributed. The Commission further points out that in *Mississippi Indus.*, 808 F.2d at 1565–66, the court rejected the proposition urged by petitioners that *AEP*'s approval of a cost allocation supports mandating such an allocation here. Any suggestion by petitioners that the Commission's quotation from *Utah Power & Light Co.*, 45 FERC ¶ 61,095, 1988 WL 391163 (1988), indicates confusion about whether it was resolving or deferring the § 205 issue for the amended System Agreement, *see Opinion No. 385*, 65 FERC at 62,474–75, is belied by the Commission's findings on the § 205 issue. *E.g.*, *id.* at 62,464. Finally, as the Commission notes, *Northeast Utils. Serv. Co.*, 50 FERC ¶ 61,266, 1990 WL 316613 (1990), suspending a proposed rate, provides no guidance here.

■ As evidence of undue discrimination, petitioners point to their lost opportunity to benefit from open market sales of excess capacity, instead of being obligated under the System Agreement to afford Gulf States access to such capacity through the system pool at below-market rates. They also point to the loss of their ability to take advantage of depreciation avoidance, whereby, for example, Arkansas Electric Energy Consumers asserts that it has fully depreciated generating plants, the front-end costs of which have been borne by the EOCs' ratepayers. Yet these circumstances do not demonstrate unduly disparate treatment between Gulf States and the Entergy EOCs with respect to intrasystem energy exchanges or capacity equalization payments. As the ALJ pointed out, petitioners ignore the generation that Gulf States brings to the Entergy power pool. *Initial Decision*, 64 FERC at 65,102–03. The merger also gives the EOCs access to Gulf States' facilities without their having to pay equalization

charges related to prior depreciation expense.

Nor do petitioners show exceptional cost circumstances here (namely, enormous disparities in per-megawatt costs) as were at issue in Opinion Nos. 234 and 292, when the Commission imposed a rough equalization of each operating company's investment in the system's nuclear generating facilities due to exorbitant and unforeseen cost overruns at the Grand Gulf facility. *See Mississippi Indus.*, 808 F.2d at 1530. The Commission was not confronted here with the undue discrimination that it sought to remedy in Opinion Nos. 234 and 292, when Arkansas Power & Light Co. sought exemption from Grand Gulf's costs.

■ Nor, contrary to petitioners' contention, does the Commission's rejection of petitioners' proposed modifications to the amended System Agreement indicate that the Commission unlawfully applied a § 203 standard to a § 205 issue. Although the Commission's rationale in Opinion No. 385 for rejecting petitioners' MSS–1 and MSS–3 proposals is at times turgid, *see, e.g., Opinion No. 385*, 65 FERC at 62,475, 62,-504, the Commission's explanation on rehearing provides sufficient support for its conclusions. As the Commission stated on rehearing, petitioners initially framed the MSS–1 issue in § 203 terms by contending during the administrative proceedings that "because they would have to bear an increase in costs (which, in their view is unjust and unreasonable), the Commission could not approve the merger as consistent with the public interest *without [petitioner]s' respective so-called 'hold-harmless' provisions.*" *Opinion No. 385–A*, 67 FERC at 61,586 (emphasis in original). Hence, in addressing this concern, the Commission understandably explained that petitioners' proposed modifications were not required to ensure that the merger complied with the public interest. *Id.*

Petitioners made similar contentions with respect to a proposed "hold-harmless" provision for the MSS–3 schedule. The Commission properly rejected this modification on the ground that it would unduly discriminate against *Gulf States* "because it requires Gulf States to contribute to the MSS–3 energy pool on the same basis as the existing Operating Companies, but it ranks Gulf States last in line of priority for taking energy from the MSS–3 pool." *Opinion No. 385*, 65 FERC at 62,506. More generally, given the simultaneous and related filing of the Entergy merger application under § 203, the Commission could reasonably evaluate the merits of the System Agreement amendment "in the context of the merger," *Opinion No. 385–A*, 67 FERC at 61,586, such that the fact that all parties would experience net benefits from the merger provided substantial evidence for finding that there would be no undue discrimination under § 205.

Therefore, because the Commission adhered to established practice on the Entergy System in subjecting Gulf States to virtually the same System Agreement terms as the EOCs, and petitioners fail to show, given the relationship of the System Agreement amendment to the merger, that the Commission's decision was unreasonable, not based on substantial evidence in the record, or otherwise unclear in the path of its reasoning, *see Sithe*, 165 F.3d at 948, their contentions under §§ 203 and 205 fail.

## IV.

■ Petitioners' contention that the Commission improperly disposed of the competition issue without an evidentiary hearing is also unavailing. Petitioners identify no material issue of fact that could not be properly resolved by the Commission on the written record and thus fail to show that its decision to forego an eviden-

tiary hearing was an abuse of discretion. *See Moreau v. FERC,* 982 F.2d 556, 568 (D.C.Cir.1993).

Consistent with the public interest standard for mergers, 16 U.S.C. § 824b(a); *Wabash Valley Power Ass'n v. FERC,* 268 F.3d 1105, 1108 (D.C.Cir.2001), the Commission identified the merger's benefits as including the expansion of Entergy's third-party open access tariff ("OATT") to Gulf States' service territory in perpetuity. *Opinion No. 385,* 65 FERC at 62,464. In the Hearing Order, the Commission stated that expansion of Entergy's OATT would "adequately mitigate any increase in market power in the relevant geographic and product market" that might result from the merger. *Hearing Order,* 62 FERC at 61,374. The Commission explained on rehearing of the Hearing Order that extension of the OATT to Gulf States' service territory could be expected to allow competitors access to additional generating capacity to serve petitioner Arkansas Cities and Cooperative's market. *See* Order Denying Rehearing of Hearing Order, 64 FERC at 61,011. As the court stated in *Louisiana Energy and Power Auth. v. FERC,* 141 F.3d 364, 370 (D.C.Cir.1998), "[t]his is the kind of reasonable agency prediction about the future impact of its own regulatory policies to which we ordinarily defer." The Commission's reasonable conclusion regarding the expansion of Entergy's OATT is also dispositive of petitioners' contention that the Commission failed to give appropriate consideration to the Herfendahl–Hirschmann Index of Concentration Ratios ("HHI").[6] *See Hearing*

*Order,* 62 FERC at 61,374–75. Given the ease of market entry provided by the expansion of the Entergy OATT, the Commission need not have held a hearing because, as petitioners contend, the merger would result in an increased HHI.[7] *See Order* Denying Rehearing of Hearing Order, 64 FERC at 61,011. The Commission's finding that no petitioner had demonstrated pre-merger competition between Gulf States and Entergy Systems to be more than *de minimus, see Opinion No. 385–A,* 62 FERC at 61,374, is supported by the record, further indicating that the Commission did not abuse its discretion in declining to conduct an evidentiary hearing on the wholesale competition issue.

Accordingly, we deny the petitions for review.

---

6. The Herfindahl–Hirschman Index refers to a measurement of market concentration that "is calculated by summing the squares of the individual market shares of all the participants." *Hearing Order,* 62 FERC at 61,374 (referring to § 1.5 of the 1992 Merger Guidelines of the Department of Justice and the Federal Trade Commission).

7. The Commission states in its brief that defects in Entergy's OATT that were identified in *Cajun Elec. Power Coop. v. FERC,* 28 F.3d 173 (D.C.Cir.1994), have been eliminated, citing *Entergy Servs. Inc.,* 85 FERC ¶ 61,163, 61,647, 1998 WL 758087 (1998). We express no opinion on the matter.