# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 7, 2010                 Decided July 16, 2010

No. 09-1220

RICHARD BLUMENTHAL, ATTORNEY GENERAL FOR THE STATE
OF CONNECTICUT, AND CONNECTICUT OFFICE OF CONSUMER
COUNSEL,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

ISO NEW ENGLAND INC. AND NEW ENGLAND POWER POOL
PARTICIPANTS COMMITTEE,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Michael C. Wertheimer*, Assistant Attorney General, Attorney General's Office of the State of Connecticut, argued the cause for petitioner. With him on the briefs were *John S. Wright*, Assistant Attorney General, and *Joseph A. Rosenthal*.

*Beth G. Pacella*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent.

With her on the brief were *Thomas R. Sheets*, General Counsel, and *Robert H. Solomon*, Solicitor.

Before: SENTELLE, *Chief Judge*, and BROWN and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: This case arises because the State of Connecticut thinks that executives with ISO New England – a non-profit entity that administers New England's wholesale electricity market – got too greedy when setting executive compensation.

Utility companies like ISO New England must file their proposed electric power tariffs – including their proposed executive compensation – with the Federal Energy Regulatory Commission for FERC's annual approval. In late 2008, ISO New England submitted its 2009 executive compensation plan to FERC and supported that plan with an independent consultant's report as to the reasonableness of the proposed executive compensation. Over the objections of the State of Connecticut, FERC then approved ISO New England's executive compensation for 2009. In this Court, Connecticut raises a variety of procedural and substantive challenges to FERC's approval – the core of Connecticut's complaint being its view that ISO New England's executive pay is too high. Although Connecticut's concerns are not without some basis, our deferential standard of review requires that we deny the State's petition.

I

ISO New England is a private, non-profit utility company that administers New England's energy markets. Under the Federal Power Act, companies like ISO New England must file their rates and service terms with the Federal Energy Regulatory Commission, which in turn must ensure that those rates and terms are "just and reasonable." 16 U.S.C. § 824d(a).

In October 2008, ISO New England filed its proposed 2009 rates with FERC and at the same time sought approval for its 2009 executive compensation plan.

Acting on behalf of the State of Connecticut, the Connecticut Attorney General intervened in the FERC proceedings. Connecticut argued that FERC should hold an evidentiary hearing on ISO New England's proposed 2009 executive compensation. According to Connecticut, ISO New England did not provide sufficient evidence to demonstrate that its executive compensation plan for 2009 was just and reasonable. At the time of Connecticut's initial filing, ISO New England had provided only the total amount of its proposed executive compensation package for all executives combined.

In December 2008, in response to Connecticut's filing, ISO New England provided FERC with additional information supporting its 2009 executive compensation plan. That submission included the 2009 estimated total compensation for 11 senior executives, ranging from $984,000 for ISO New England's President to $319,000 for the Vice President of Information Services. The filing also contained a report produced by Mercer Consulting – an

independent consulting firm – supporting the reasonableness of ISO New England's estimated executive compensation. In addition, ISO New England's supplemental filing explained the process it used to calculate proposed executive compensation, which included approval by ISO New England's independent Board of Directors.

FERC then approved ISO New England's 2009 executive compensation plan. *See ISO New England Inc.*, Order Accepting Tariff Revisions, 125 FERC ¶ 61,392 (2008).

Connecticut filed a petition for rehearing. Connecticut argued that FERC should hold an evidentiary hearing to consider the merits of ISO New England's executive compensation plan. The State also raised several objections to the Mercer analysis underlying FERC's approval of the executive compensation plan. FERC denied Connecticut's request for a rehearing. *See ISO New England Inc.*, Order Denying Rehearing, 127 FERC ¶ 61,254 (2009).

Connecticut now seeks review in this Court of FERC's decision.

II

Connecticut raises two distinct procedural challenges to FERC's approval of ISO New England's executive compensation plan.

*First*, Connecticut argues that FERC must hold an evidentiary hearing to determine whether Mercer – the independent consultant that reviewed ISO New England's proposed executive compensation – was biased. Connecticut suggests that Mercer's sole motivation when reviewing ISO

New England's executive compensation was Mercer's desire to be rehired in the future.  In Connecticut's view, the issues raised by this alleged bias called for an evidentiary hearing.

FERC's choice whether to hold an evidentiary hearing "is generally discretionary."  *Cerro Wire & Cable v. FERC*, 677 F.2d 124, 128 (D.C. Cir. 1982); *see Moreau v. FERC*, 982 F.2d 556, 568 (D.C. Cir. 1993).  It is well established in the context of FERC proceedings that "mere allegations of disputed facts are insufficient to mandate a hearing; petitioners must make an adequate proffer of evidence to support" their claim.  *Cerro*, 677 F.2d at 129; *see Braintree Elec. Light Department v. FERC*, 550 F.3d 6, 13 (D.C. Cir. 2008); *Gen. Motors Corp. v. FERC*, 656 F.2d 791, 798 n.20 (D.C. Cir. 1981).

Connecticut provides nothing more than a bald assertion that Mercer was biased.  As the Commission rightly concluded in response to this contention: "Mercer Consulting's motivations are no different from any other independent paid consultant's, including any that" Connecticut itself "would hire."  *ISO New England Inc.*, Order Denying Rehearing, 127 FERC ¶ 61,254, at ¶ 22 (2009).  Without more, Connecticut's assertion of bias does not require FERC to hold a hearing.

To bolster its plea for an evidentiary hearing on this ground, Connecticut cites this Court's case law stating that "FERC may resolve factual issues on a written record unless motive, intent, or credibility are at issue or there is a dispute over a past event."  *Union Pac. Fuels, Inc. v. FERC*, 129 F.3d 157, 164 (D.C. Cir. 1997).  Connecticut argues that Mercer's credibility is at issue and that resolution on a written record alone is not permitted.  But Connecticut does not raise a

genuine issue of credibility, only an unsubstantiated general claim.  Under our case law, that kind of bare allegation does not require an agency to conduct an evidentiary hearing.  *Cf. Braintree*, 550 F.3d at 13; *Cerro*, 677 F.2d at 129.

*Second*, Connecticut contends that FERC must hold an evidentiary hearing to assess the validity of Mercer's methodology – in particular, Mercer's choice of which companies to consider as ISO New England's peers when Mercer determined the reasonableness of ISO New England's executive compensation.  The State asserts that Mercer used the wrong companies as a measuring stick – a point it raises in arguing for a hearing and in challenging the substantive reasonableness of ISO New England's executive compensation (we address the latter point below).  Connecticut says that the comparison companies had higher revenues and that their executive salaries thus provided an inaccurate basis for comparison.

Even when there are disputed factual issues, FERC does not need to conduct an evidentiary hearing if it can adequately resolve the issues on a written record.  *See Ark. Elec. Energy Consumers v. FERC*, 290 F.3d 362, 369-70 (D.C. Cir. 2002); *Moreau*, 982 F.2d at 568.  FERC reviewed the filings in this case – which included a detailed justification of the composition of the comparison group – and determined that no evidentiary hearing was necessary to determine the validity of Mercer's approach.  Nothing in the record suggests that FERC's decision to resolve the issue without a hearing was unreasonable.

III

Connecticut also asserts that FERC's decisonmaking process violates the Due Process Clause of the Fifth Amendment.

*First*, in a constitutional spin on its plea for an evidentiary hearing, Connecticut contends that its due process rights were abridged by FERC's refusal to hold such a hearing. Due process generally requires a "meaningful opportunity" to be heard before one is deprived of life, liberty, or property. *BNSF Ry. Co. v. Surface Transp. Bd.*, 453 F.3d 473, 486 (D.C. Cir. 2006) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)). But Connecticut was heard in this case; it had an opportunity to submit its objections, and FERC carefully considered them. This Court has never held that an *in-person evidentiary* hearing is constitutionally required whenever FERC makes decisions. Indeed, we have frequently suggested the opposite. *See Moreau v. FERC*, 982 F.2d 556, 568 (D.C. Cir. 1993); *Cerro Wire & Cable v. FERC*, 677 F.2d 124, 129 (D.C. Cir. 1982). Connecticut provides no good reason for us to create a new due process right to an evidentiary hearing where none now exists.

*Second*, Connecticut argues that it was denied due process because it did not have an opportunity to respond to ISO New England's executive compensation filings before FERC issued its initial decision. But Connecticut had such an opportunity and took advantage of it when filing its petition for rehearing, which FERC in turn thoroughly considered. So this due process argument fails as well.

IV

Connecticut separately contends that – regardless of whether an evidentiary hearing should have been held – FERC's approval of ISO New England's executive compensation plan was substantively unreasonable and thus arbitrary and capricious for purposes of the Administrative Procedure Act. Connecticut raises three separate substantive challenges to FERC's approval of ISO New England's executive compensation levels.

*First*, as alluded to above, Connecticut argues that Mercer used the wrong companies when measuring the appropriateness of ISO New England's executive compensation. According to Connecticut, ISO New England's executive compensation was excessive when compared to that of similarly situated entities.

ISO New England brings in annual revenues of around $128 million. Mercer based its review of ISO New England's executive compensation on companies with revenues in the billions. Mercer reasoned that these higher-revenue companies constituted an appropriate comparison group because executive jobs at those companies matched the jobs at ISO New England in terms of sophistication and complexity. Moreover, Mercer observed that "ISO New England competes for executive talent in a broad labor market in the energy/utility industry, and for some [positions] . . . in the broader/general industry as well." J.A. 263. Taking those considerations into account, Mercer concluded that ISO New England's proposed "executive compensation is within a reasonable range of competitive practices for functionally comparable positions among similarly-situated entities." *ISO*

*New England Inc.*, Order Accepting Tariff Revisions, 125 FERC ¶ 61,392, at ¶ 35 (2008). FERC accepted the comparison group based on Mercer's detailed reasoning and concluded that ISO New England had "justified its proposed executive compensation package" and that ISO New England's executive compensation was "just and reasonable." *Id.*

In this context, the proper level of executive compensation is more art than science. For purposes of the deferential arbitrary and capricious standard, even if we would have used a different comparison group, we cannot say that FERC's decision to accept Mercer's analysis was unreasonable.

*Second*, Connecticut argues that FERC must base its approval of ISO New England's proposed 2009 executive compensation plan on the actual compensation for its executives, not on estimated compensation. That argument contravenes our precedents. As we have said, "[s]tandard FERC ratemaking, in its most simple form, involves projecting a revenue requirement." *Interstate Natural Gas Ass'n v. FERC*, 285 F.3d 18, 56 (D.C. Cir. 2002) (internal quotation marks omitted). And this Court has repeatedly validated that type of ratemaking approach. *Cf. Williston Basin Interstate Pipeline Co. v. FERC*, 165 F.3d 54, 56-57 (D.C. Cir. 1999); *American Pub. Power Ass'n v. FPC*, 522 F.2d 142, 143-47 (D.C. Cir. 1975). Albeit arising in a slightly different context, those precedents support FERC's consideration of estimated executive compensation in this case.

*Third*, Connecticut relatedly argues that FERC's approval is unreasonable in light of the dramatic economic downturn in

late 2008. Connecticut suggests that ISO New England's executive compensation levels should have gone down as well. In a play on President Kennedy's famous observation, Connecticut asserts that a "declining tide should lower all boats." Connecticut Br. at 10 (quotation omitted).

FERC considered this argument and concluded that it was appropriate for ISO New England to base its executive compensation package "on the facts as they existed when" it drafted its executive compensation package in early 2008. *ISO New England Inc.*, Order Denying Rehearing, 127 FERC ¶ 61,254, at ¶ 22 (2009). FERC further noted that when ISO New England seeks "approval for executive compensation again" for 2010, "it may use any new benchmarks that have arisen due to the economic situation at that time." *Id.*

FERC, not the Judiciary, has the principal statutory role in determining the reasonableness of rates and proposed executive compensation for companies such as ISO New England. In exercising its authority, FERC allowed some lag time between the market downturn and adjustments to executive compensation. Although FERC could have clamped down more (or more quickly) on ISO New England's executive compensation, our role is only to determine whether FERC's contrary approach was so unreasonable as to violate the APA's deferential arbitrary and capricious standard. In light of the judicial restraint we must exercise when applying that standard, we cannot say that FERC's decision jumped the rails of reasonableness.

\* \* \*

We deny Connecticut's petition for review.

*So ordered.*