# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 18, 2011      Decided December 20, 2011

No. 11-5077

GUNDERSEN LUTHERAN MEDICAL CENTER, INC.,
APPELLANT

v.

KATHLEEN SEBELIUS,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-02195)

*Jeffrey A. Lovitky* argued the cause and filed the briefs for appellant.

*Ian Samuel*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Tony West*, Assistant Attorney General, *Ronald C. Machen, Jr.*, U.S. Attorney, and *Michael S. Raab*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: KAVANAUGH, *Circuit Judge*, and SILBERMAN and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Gundersen Lutheran Medical Center, Inc. appeals the district court's grant of summary judgment to the Secretary of the Department of Health and Human Services. Gundersen, which sought review under the APA, claimed the Secretary's delegee failed to "disapprove[]" Gundersen's reimbursement request within 60 working days, as required by the Medicare Act, because the delegee did not notify Gundersen of its asserted disapproval within the 60-day time period. We conclude that notification of Gundersen within 60 days was not necessary for the disapproval to be effective, and therefore affirm the district court.

\* \* \*

Under the Medicare Act, the Secretary, acting through the Department's Centers for Medicare and Medicaid Services, reimburses health care providers like Gundersen who provide dialysis treatments to individuals with end stage renal disease. The Act sets a "composite rate" for reimbursements for each dialysis treatment a provider furnishes, but a provider can seek an exception by submitting an application to one of the Department's fiscal intermediaries (insurance companies) who then must pass on the application to the Department (the Centers). The Act states – and this is the disputed language – that "[e]ach application for such an exception shall be deemed to be approved unless the Secretary disapproves it by not later than 60 working days after the date the application is filed." 42 U.S.C. § 1395rr(b)(7).

Gundersen sought such an exception on July 2, 2001, making the 60th working day September 25, 2001. The Centers, on September 21, 2001, informed the fiscal intermediary in writing that the exception was denied. But the fiscal intermediary did not notify Gundersen of the Secretary's (the

Centers's) disapproval until October 1, *i.e.* after the 60th working day.

Gundersen argues that the Secretary's decision to "disapprove[]" an application is not effective until it is communicated to the provider. It is claimed that communication to the fiscal intermediary – an agent of the Secretary – is not adequate because the Secretary's decision (the Centers's) could be altered at any time. Moreover, since by regulation the provider has only 180 days to appeal the Centers's decision up through the Department, if a disapproval decision was not communicated to the provider, its appeal rights could be jeopardized. Gundersen buttresses its Medicare statutory argument by recourse to the Freedom of Information Act, pointing out that 5 U.S.C. § 552(a)(2) prohibits an agency from relying on or using final administrative orders unless they have been "made available," published in an agency's reading room, or a party has actual and timely notice of its terms. According to Gundersen, because the agency did not publish the letter in its reading room and Gundersen only received notice of the Secretary's denial after the 60-day period ended, the Centers could not rely on it before then to make the disapproval effective.

The government responds – which is true – that the disputed statutory language, unlike other provisions of the Medicare Act, does not call for notice of the Secretary's disapproval decision within a specific time period. The government argues that even if the word "disapproves" was thought ambiguous, the government is entitled to *Chevron* deference, and the government's interpretation that the Secretary "disapproves" an application when the decision is "rendered" is permissible. Yet the government never suggested just how a disapproval is to be manifested in order to qualify as "rendered" – and the

government's brief implied that a decision of disapproval could be in the mind of the decision maker.

We agree with Gundersen's premise that "disapproves" is a meaningless concept unless disapproval is communicated in some fashion. At oral argument, the government essentially conceded that point by acknowledging that there would have to be some evidence that a disapproval decision was rendered in an official way, at a certain time. We take it that implies something in writing. After all, the statute imposes an obligation on the Secretary to disapprove a request within the 60-day period; the default position, if the government does not act, is approval. Because silence is therefore approval, the Secretary (the Centers) must demonstrate the contrary. Although the statute does not address the question of how a disapproval is to be manifested, and so *Chevron* deference is called for, it seems to us that it would be an unreasonable interpretation for the government to claim that an oral statement uttered only within the Centers is an adequate demonstration.

Be that as it may, in this case, the Centers communicated the disapproval to the fiscal intermediary – in writing – within the 60-day period. As such, the decision to disapprove was clearly memorialized. As to Gundersen's argument that FOIA requires actual notice to the appellant, the government points out that FOIA can be satisfied alternatively by making an order "available." By sending a denial letter to the fiscal intermediary, the Centers have certainly made it available to Gundersen. All Gundersen needed do was to call the fiscal intermediary – or even the Centers – to determine whether the Centers disapproved within 60 working days.

Gundersen nevertheless argues that a decision communicated only to an agent of the Department – the fiscal intermediary – cannot be thought a reasonable interpretation of

the word "disapproves" because the decision could be altered before it was communicated to an applicant. That argument – when one thinks about it – is rather twisted. The only way the decision could be altered would be to revoke the disapproval, and that could only be to the benefit of an applicant. Which means, of course, no applicant would have standing to complain about such an action.

Gundersen's more substantial argument is based on a provider's appeal rights. By regulation, an applicant must appeal the Centers's decision "within 180 days of the date of the decision."[1] If the Centers's purported disapproval was not communicated to an applicant in a timely manner, Gundersen argues, an applicant's appeal rights could be jeopardized. That strikes us as only a theoretical problem because, as in this case, once the disapproval is communicated to the fiscal intermediary within the 60-day period, it is available to the applicant. But if, for some hypothetical reason, the Centers's decision was not available to the applicant in a timely manner, the relevant question would be how to interpret the appeal regulation – not the statute. Presumably it would be unreasonable (arbitrary and capricious) to apply the regulation to an applicant who failed to appeal in a timely manner through no fault of its own.

For the foregoing reasons we affirm the district court.

*So ordered.*

---

[1] 42 C.F.R. § 413.194(c) (2001).