# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 8, 2017       Decided January 26, 2018

No. 15-1453

PJM POWER PROVIDERS GROUP,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

PJM INTERCONNECTION, LLC, ET AL.,
INTERVENORS

Consolidated with 15-1455

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

*Kenneth R. Carretta* argued the cause for petitioners. With him on the briefs were *Cara J. Lewis* and *John L. Shepherd Jr. John N. Estes III* and *Paul F. Wight* entered appearances.

*Anand R. Viswanathan*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief was *Robert H. Solomon*, Solicitor. *Lisa B. Luftig*, Attorney, entered an appearance.

*Paul M. Flynn* argued the cause for intervenors. With him on the brief were *Jennifer H. Tribulski*, *Ryan J. Collins*, *Adrienne E. Clair*, *Robert A. Weishaar Jr.*, *Gary J. Newell*, *Christopher S. Porrino*, Attorney General, Office of the Attorney General for the State of New Jersey, and *Carolyn McIntosh*, Deputy Attorney General. *Dennis Lane* and *Alex Moreau*, Deputy Attorney General, Office of the Attorney General for the State of New Jersey, entered appearances.

Before: GARLAND, *Chief Judge*, WILKINS, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: Congress has given the Federal Energy Regulatory Commission (FERC) authority to regulate the transmission and sale at wholesale of electric energy in interstate commerce. 16 U.S.C. § 824(a), (b). FERC tasks certain non-profit entities, known as regional transmission organizations, with managing the transmission of electricity over the electric grid and ensuring that energy is reliably available for consumers. 18 C.F.R. § 35.34; *see Advanced Energy Mgmt. Alliance v. FERC*, 860 F.3d 656, 659 (D.C. Cir. 2017). One such regional transmission organization is PJM Interconnection, LLC, which has responsibility for administering a tariff that determines the rates paid to energy providers for providing electric capacity in the broad mid-Atlantic region.[1] *See Advanced Energy*, 860 F.3d at 659-60. FERC, in turn, must ensure that PJM Interconnection's tariff is "just and reasonable." 16 U.S.C. § 824d(a).

---

[1] "'Capacity' is the ability to produce electricity. Purchasers of capacity acquire the right to buy electricity in the future." *Advanced Energy*, 860 F.3d at 659.

This case concerns one element of PJM Interconnection's 2014 tariff revisions: the estimated cost of new entry, which approximates the revenue that a newly constructed power generator would need to recoup its costs. Through a complicated methodology, which we fortunately need not test the reader's patience by explaining again, the cost of new entry affects the prices paid to energy providers for electric capacity. *See TC Ravenswood, LLC v. FERC*, 741 F.3d 112, 114-15 (D.C. Cir. 2013); *see also N.J. Bd. of Pub. Utils. v. FERC*, 744 F.3d 74, 84-87 (3d Cir. 2014). The petitioners in this case -- PJM Power Providers Group, a coalition of energy providers, and the PSEG Companies, a public utility holding company and its subsidiaries -- challenge FERC's orders approving PJM Interconnection's tariff. *See* 149 FERC ¶ 61,183 (Nov. 28, 2014) (Initial Order); 153 FERC ¶ 61,035 (Oct. 15, 2015) (Rehearing Order). In the petitioners' view, the cost of new entry submitted by PJM Interconnection and approved by FERC is too low. Consequently, they argue, the resulting price that they are paid for wholesale capacity is also too low. And this, they say, means that the PJM Interconnection tariff that FERC approved is not just and reasonable.

I

We review FERC's orders under the Administrative Procedure Act, asking whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Braintree Elec. Light Dep't v. FERC*, 667 F.3d 1284, 1288 (D.C. Cir. 2012) (quoting 5 U.S.C. § 706(2)(A)). The Commission's factual findings, "if supported by substantial evidence," are "conclusive." 16 U.S.C. § 825*l*(b).

The petitioners acknowledge that "[t]he questions posed here are purely factual issues," and they challenge FERC's orders solely on the ground that they are unsupported by

substantial evidence. Petitioners' Reply Br. 4. Our review in these circumstances is "highly deferential, as issues of rate design are fairly technical and, insofar as they are not technical, involve policy judgments that lie at the core of the regulatory mission." *Alcoa Inc. v. FERC*, 564 F.3d 1342, 1347 (D.C. Cir. 2009) (internal quotation marks and citation omitted). As the Supreme Court has made clear, our role is "not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 782 (2016). Instead, we must "affirm the Commission's orders so long as FERC examined the relevant data and articulated a rational connection between the facts found and the choice made." *Alcoa*, 564 F.3d at 1347 (internal quotation marks and citation omitted); *see Elec. Power Supply Ass'n*, 136 S. Ct. at 782.

Having examined them in detail, we conclude that none of the petitioners' objections to the cost-of-new-entry figure that FERC approved can overcome our deferential standard of review.

1. The petitioners' first objection is that FERC lacked substantial evidence to approve the estimates of labor costs that formed part of the calculation of the cost of new entry. FERC's labor-cost analysis relied principally on affidavits by Paul Sotkiewicz, an economist employed by PJM Interconnection. *See* Initial Order P 108; Rehearing Order PP 76, 78. Sotkiewicz concluded that a generic power generator could be constructed in 360,000 labor hours, a figure he supported by pointing to, inter alia, three studies conducted by different consulting firms. *See* Sotkiewicz Initial Affidavit ¶¶ 38, 39 (J.A. 73-74); Sotkiewicz Answering Affidavit ¶¶ 5, 6 (J.A. 683). The petitioners attack Sotkiewicz's reliance on each of those studies.

One of the studies, authored by the CH2M Hill engineering firm, had previously been submitted in a 2011 FERC proceeding. The petitioners maintain that this study lacks "probative value" because the prior proceeding was resolved by settlement before the Commission had an opportunity to make a final just-and-reasonable determination. Petitioners' Reply Br. 15. But the fact that the matter was settled does nothing to diminish the study's reliability. Nor is there any requirement that witnesses cite only to studies that FERC has previously blessed.

The petitioners assert that a second study, prepared by Sargent & Lundy, could not have contained the data Sotkiewicz said it did. But consultants from the firm that commissioned the Sargent & Lundy study filed an affidavit corroborating Sotkiewicz's representations. *See* Pfeifenberger & Zhou Affidavit 23 (J.A. 639). Although the petitioners insist that the affidavit is hearsay, hearsay can constitute substantial evidence in an administrative proceeding. *See Lacson v. U.S. Dep't of Homeland Sec.*, 726 F.3d 170, 178 (D.C. Cir. 2013). And here it does, because the consultants were "uniquely in a position to know" the relevant information. *Honeywell Int'l, Inc. v. EPA*, 372 F.3d 441, 447 (D.C. Cir. 2004) (citation omitted); *see Second Taxing Dist. v. FERC*, 683 F.2d 477, 488 & n.14 (D.C. Cir. 1982).

As to the third study, prepared by Stantec Consulting Services, the petitioners object on the ground that no witness with personal knowledge of that study appeared before FERC and that the report itself was not entered into the record. The petitioners cite no authority for the proposition that personal-knowledge testimony is required for reliance on an expert report in a FERC proceeding. Indeed, as we have just mentioned, hearsay can be admissible in such proceedings. And

although failure to include an underlying report in the record of an agency proceeding could be troubling in some circumstances, here FERC reasonably relied on Sotkiewicz's assessment of multiple information sources -- "including a review of publicly-available data" -- of which the Stantec estimate was just one part. Rehearing Order P 76; *see* Initial Order P 108 (noting that "PJM reviewed the market monitor's estimate of construction labor and found that it was consistent with public information on utility construction labor costs"); *id.* (citing Sotkiewicz's statement that "the values closely track data from the U.S. Bureau of Labor Statistics Quarterly Census of Employment and Wages"); Sotkiewicz Initial Affidavit ¶¶ 37, 41 (J.A. 73-75) (discussing Bureau of Labor Statistics data); Sotkiewicz Answering Affidavit ¶¶ 5, 8 (J.A. 683-84) (same).

2. Next, the petitioners contend that FERC should have accepted the labor-cost calculations of the petitioners' expert, Robert Uniszkiewicz, who, in their view, possessed more "expertise and experience regarding construction related matters" than did Sotkiewicz. Petitioners' Br. 52. But FERC reasonably explained that it preferred Sotkiewicz's analysis to Uniszkiewicz's because the latter had failed to account for economies of scale. Rehearing Order P 77. This court "defers to the Commission's resolution of factual disputes between expert witnesses," *Transmission Agency of N. Cal. v. FERC*, 628 F.3d 538, 551 (D.C. Cir. 2010) (quoting *Elec. Consumers Res. Council v. FERC*, 407 F.3d 1232, 1236 (D.C. Cir. 2005)), and the Commission's explanation for its preference was reasonable.

The petitioners further argue that FERC should have held an evidentiary hearing to adjudge the comparative credibility of the two experts. But the petitioners' challenge -- based on their claim of the superior expertise of their witness -- goes not to Sotkiewicz's credibility but to the weight of his evidence. FERC did not abuse its discretion in deciding to rely on the

written record to resolve that question. *See Minisink Residents for Envt'l Pres. & Safety v. FERC*, 762 F.3d 97, 114-15 (D.C. Cir. 2014); *Blumenthal v. FERC*, 613 F.3d 1142, 1144-45 (D.C. Cir. 2010).

3. Finally, the petitioners contend that FERC erred in approving another input to the estimated cost of new entry: the cost of capital. FERC approved the methodology that the Brattle Group, PJM Interconnection's consultant, used to estimate this input. That methodology relied on a proxy group of eight energy companies, including publicly traded independent power producers, merchant generation companies that were recently acquired by other companies, and recent merchant generation divestitures. *See* Samuel A. Newell et al., *Cost of New Entry Estimates for Combustion Turbine and Combined Cycle Plants in PJM* 34-37 & tbl.25 (May 15, 2014) (J.A. 159-62). The petitioners object to PJM's reliance on this group, maintaining that the majority of new generator construction is instead financed by private-equity firms, which, they assert, require higher rates of return than publicly traded companies.

But "[m]erely because petitioners can conceive of a . . . method that they believe would be superior to the one FERC approved does not mean that FERC erred in concluding the latter was just and reasonable." *Wisc. Pub. Power, Inc. v. FERC*, 493 F.3d 239, 266 (D.C. Cir. 2007). FERC considered the petitioners' contention, but approved PJM's exclusion of private-equity investors from the sample because their cost of capital was not observable in the market and hence was not "verifiable." Rehearing Order P 57; *see also* Newell et al., *supra*, at 35 n.27 (J.A. 160) ("We do not include private equity investors in our sample because the cost of equity cannot be observed in market data."). Moreover, the Commission concluded that the private-equity data the petitioners proffered

was unreliable for calculating cost of capital in the electricity context because it "consist[ed] of portfolios of investments in many different projects in many different industries." Initial Order PP 82, 91; *see* Rehearing Order P 67. This response was a "reasonable explanation for rejecting" the petitioners' contention. *See Elec. Consumers Res. Council*, 407 F.3d at 1241.

## II

For the foregoing reasons, the petitioners' objections fail to undermine the substantial evidence supporting FERC's approval of PJM Interconnection's figure for the cost of new entry. The petitions for review are therefore

*Denied.*